## ANTOINETTE B. WAJDA v. CITY OF MINNEAPOLIS AND OTHERS.

246 N. W. 2d 455.

September 24, 1976—No. 45986.

*Barna, Guzy, Hynes, Giancola & Jensen,* and *Gabriel D. Giancola,* for appellant.

*Walter J. Duffy, Jr.,* City Attorney, and *Robert J. Alfton,* Assistant City Attorney, for respondents.

TODD, JUSTICE.

Antoinette B. Wajda appeals from an order of the district court sustaining the action of the Minneapolis City Council denying her an on-sale 3.2 beer[1] license for premises owned by her and operated as a 3.2 tavern since 1954. The two grounds stated in support of this denial were the misconduct of former licensees while operating the tavern as tenants of Mrs. Wajda, and the unsuitability of the tavern to the neighborhood in which it was located. We reverse and remand.

Mrs. Wajda is the owner of the premises at 3658 2 1/2 Street N. E., Minneapolis. She and her late husband acquired the property in 1954 and operated a 3.2 tavern thereon under license from the city of Minneapolis for several years. After the death of Mr. Wajda in 1961, Mrs. Wajda operated the business on her own under a license issued to her in February 1962 until 1965, when she leased the premises to another licensee. This licensee and subsequent licensees continued the operation of the tavern until 1970. During this entire 16-year period, the business was operated without violation of the law.

At the time the property was acquired by the Wajdas, it was

---

[1] See, Minneapolis Code of Ordinances, § 360.10.

zoned commercial. In 1963, the property was rezoned to residential but the tavern continued to operate on the premises as a nonconforming use.

In 1970, Mrs. Wajda leased the premises to one of her sons, Anthony J. Wajda, who operated the business until 1972. During his operation of the business he was charged with violating ordinances regulating the operation of nonintoxicating liquor establishments. Wajda was warned by the police license inspector's office that if he was found guilty, his upcoming renewal application would not be approved. He therefore transferred the license to John D. Patterson, who apparently had no association with Mrs. Wajda or her son, and whose record was good.

However, during Patterson's operation of the premises, numerous beer license violations, as well as other offenses, occurred thereon. In addition, 32 residents of the area signed a petition complaining of various nuisances caused by the operation of the tavern and the conduct of its patrons. As a result of these violations, Patterson was called into the license inspector's office and asked to show cause why his license should not be revoked. He told the license inspector that he was closing the bar and going out of business. On October 18, 1974, the license for these premises was picked up and returned to the license division.

Shortly after Patterson turned in his license, Mrs. Wajda, stating that she was losing money on the empty building, applied for an on-sale beer license for the premises. She stated that her brother-in-law would manage the bar and that she would assist him. She also stated that neither of her two sons would have any connection with the ownership or operation of the business. The license inspector sent notice of an intention to refuse plaintiff's license application on January 29, 1975. On January 31, 1975, plaintiff was served with a notice of a hearing to be held (by the Consumer Services Committee of the Minneapolis City Council) on the inspector's report and recommendations, and such hearing was held on February 12, 1975. Plaintiff was represented by counsel at the hearing. As a result of testimony at the hearing,

the committee concluded that if the license were granted, past problems on the premises would be reasonably likely to recur. In reaching this conclusion, the committee relied on its finding that plaintiff knew of the violations which had occurred during her son's and Patterson's operation of the premises, and her counsel's acknowledgment that her sons might be called upon to help Mrs. Wajda to run the tavern, were she granted a license.

The committee also concluded that the address in question was not a suitable location for an on-sale beer establishment. Fifteen neighbors appeared in opposition to the granting of the license. Some testified at the hearing that an on-sale beer establishment is not compatible with the neighborhood; that the past operation was a serious nuisance, upsetting the peace and tranquility of the entire neighborhood; and that since the closing of the business, the area has been quiet, with no recurrence of past problems.

The trial judge determined that the committee's conclusions were "supported by the evidence and not arbitrary, capricious or unreasonable." In his brief memorandum accompanying his order, the judge explained his holding as follows:

"* * * The licensing authority conducted hearings giving the plaintiff adequate opportunity to be heard. The record discloses complaints involving this beer license going back over several years. Granted the plaintiff was not always the licensee but at all times material did have an interest in the premises and should, at least to some degree, be held accountable for the activities that take place at the establishment."

The issues raised are: (1) Did the Minneapolis City Council act in an arbitrary, capricious, or unreasonable manner in denying plaintiff's application for an on-sale beer license on the basis of the unfitness of former licensees operating at the same premises, which at all relevant times have been owned by plaintiff? (2) Did the Minneapolis City Council act in an arbitrary, capricious, or unreasonable manner in denying plaintiff's appli-

cation for an on-sale beer license on the basis of a finding that the premises are in an unsuitable location for an on-sale beer establishment?

■ In considering these issues, we first observe that a city council is vested with broad discretion in determining whether or not to issue or renew a 3.2 beer license, and a court's scope of review of such a determination is a narrow one, which should be exercised most cautiously. See, generally, Rhyne, Municipal Law, § 27-8; 10A Dunnell, Dig. (3 ed.) § 4911. Appellant has cited no cases, nor have we found any, where this court has reversed a decision of a legislative body denying a liquor or beer license application. Nevertheless, as is the case with all exercises of discretion by administrative agencies, the licensing authorities must not act arbitrarily or capriciously and "[c]ourts will interfere to prevent an abuse of discretionary power; and will grant relief from unreasonable, arbitrary, capricious, or fraudulent action of municipal authorities." 2 McQuillin, Municipal Corporations (3 ed.) § 10.37.

A careful review of the facts and circumstances of this particular case has convinced us that the city council's action in denying Mrs. Wajda's application was so arbitrary and capricious as to necessitate our reversal, even in light of our general reluctance to overturn discretionary decisions of this type. We conclude that the record herein does not substantiate either ground cited by the city council in support of its decision as affording an adequate basis therefor.

■ As to the first ground for the council's decision—the misconduct of other licensees—the record fails to disclose any permissible basis for drawing an adverse inference as to Mrs. Wajda's ability to properly operate the tavern from the fact that others who operated the same premises did not do so responsibly. On the contrary, the undisputed fact that Mrs. Wajda competently ran the business both by herself and together with her husband for a total of 11 years, during which period there were no significant violations or complaints from neighbors, is extremely

persuasive evidence of her fitness to properly operate the same premises in the future. Indeed, counsel for the city candidly acknowledged, during oral argument, that Mrs. Wajda's record as a former licensee, and her character, are both impeccable, and that on both of these accounts Mrs. Wajda was a fully qualified applicant.

To the contrary, the city contended at oral argument that Mrs. Wajda's fitness to properly operate the premises was cast in doubt, not by her own actions, but rather, by misconduct of her son and John Patterson while they operated the tavern.

In part, the city contended that under the management of these former licensees, the tavern acquired a bad reputation and became a favorite "hangout" of undesirable and criminal elements from other parts of the city. Counsel for the city asserted that it would take a very "strong" person to overcome this reputation and return the tavern to its previous mode of operating without legal violations or neighborhood disturbances. Counsel for the city did not specify in what respects Mrs. Wajda failed to meet this criterion other than her age (58) and her sex. This court cannot conclude that a 58-year-old woman is presumptively incapable of competently and forcefully managing a tavern in such a way as to prevent infractions and nuisances like those experienced in the past from occurring again. We find a determination which negatively prejudges her operational capabilities, particularly in light of her undeniably able past performances, to be clearly arbitrary, capricious, and unreasonable.

If the city's speculations as to Mrs. Wajda's incapacity to properly operate the premises are borne out by actual experience, the city would always have the power to rescind the license, as it had contemplated doing in the case of John D. Patterson's improper operation of these same premises. Such speculations afford no cognizable basis for the refusal to issue the license in the first place, however.

Another aspect of the city's argument that the misconduct of former licensees should be considered as a negative factor in evaluating Mrs. Wajda's application is its position that as the landlady of both of these former unsuitable licensees, and the mother of one of them, she must have been aware of their improper operation of the premises and failed to do anything to prevent it. Such a conclusion is patently contrary to the evidence, which does not disclose that Mrs. Wajda possessed any interest in the business operations of either of these two preceding licensees or any power of control over their actions. Indeed, nothing in the record indicates that Mrs. Wajda had any contact or relationship whatsoever with Patterson other than as his landlady. Finally, nothing in the record demonstrates that Mrs. Wajda had any knowledge of her tenant's misconduct. The illegal or negligent conduct of a tenant cannot be imputed to his landlord. See, generally, 65A C. J. S., Negligence, § 164. By taking such a position, the city is in effect seeking to shift its obligation to enforce its nonintoxicating liquor ordinances onto the lessor of licensed premises, an impermissible delegation of responsibility.[2] We conclude that the imposition of such vicarious liability is not permissible and represents arbitrary, capricious, and unreasonable action by the Minneapolis City Council.

■ With respect to the second ground for the denial of Mrs. Wajda's application, we hold the council's determination that the premises are unsuitable for an on-sale beer establishment to be contrary to the evidence contained in the record. Prior to the 1963 rezoning, the existing zoning specifically permitted the very use being made of the premises. Such nonconforming use was allowed to continue under the grandfather provisions of the new zoning law, and the city attorney conceded on oral argument that Mrs. Wajda had not abandoned the property's nonconform-

---

[2] It appears that Minn. St. 340.19(2) would permit denial of an intoxicating liquor license to a lessor of licensed premises upon which a violation of law has occurred. The validity of such a provision is not before us.

ing use nor done anything else to bring about the termination of that use.

The complaints lodged by neighbors during the present proceedings all dealt with the improper conduct of the business and of its patrons while it was operated by the two preceding licensees. No substantial evidence indicated that the premises themselves were inherently unsuitable as the location of a tavern if the tavern were lawfully and properly managed and operated. We therefore hold that the city council's second reason for denying Mrs. Wajda's 3.2 beer license application is also clearly arbitrary, capricious, and unreasonable.

As indicated above, the scope of judicial review when the denial of a license application is appealed is very narrow, and this court will normally sustain such discretionary decisions by municipal bodies. However, in the rare case, such as the facts herein disclose, where such a denial is patently arbitrary and capricious, we will not hesitate to act in order to prevent manifest injustice.

For the reasons set forth herein, the matter is remanded to the district court with instructions to enter its order directing the Minneapolis City Council to issue an on-sale 3.2 beer license to Mrs. Wajda at the premises here involved.

Reversed and remanded.

OTIS, JUSTICE (dissenting).

I cannot agree that this is an appropriate case to depart from precedent and for the first time reverse a municipality's exercise of its discretionary function of denying a license to operate a beer tavern.

After a full hearing before the city council's Consumer Services Committee, at which 15 persons made appearances to object to the license, the committee made the following findings and conclusions, among others:

"Since 1970, several criminal and neighbor complaints were received and investigated. These incidents are more fully explained in the report of the License Inspector to this Committee

and are incorporated by reference. That the applicant knew of these problems and was unable to abate them. As a result of these continued complaints and violations, the business was voluntarily closed and the license turned in on October 18, 1974.

"The applicant states that her son Anthony may be an employee in the business; that the manager will be Chester Wojtowicz, a brother-in-law.

\* \* \* \* \*

"* * * That numerous neighbors testified that an on-sale beer establishment is not compatible with the neighborhood; that the past operation was a serious nuisance, upsetting the peace and tranquility of the entire neighborhood; and that since the closing of the business the area has been quiet and there has been no reoccurrence of the past problems.

\* \* \* \* \*

"* * * That if the applicant is granted this license, it appears reasonably likely that the problems that existed in the past will again occur."

Thereafter the city council adopted the committee report, with only one councilman abstaining.

In affirming the action of the city council, the district court made the following findings:

"The court has reviewed the actions taken by the licensing authority and finds that the Findings of Fact and Conclusions of Law of the Consumer Services Committee of the City Council are supported by the evidence and not arbitrary, capricious or unreasonable under all of the facts and circumstances of this particular case. The licensing authority conducted hearings giving the plaintiff adequate opportunity to be heard. The record discloses complaints involving this beer license going back over several years. Granted the plaintiff was not always the licensee but at all times material did have an interest in the premises and should, at least to some degree, be held accountable for the activities that take place at the establishment."

The basis for the majority's opinion is, first, that the appellant had no knowledge of her tenants' misconduct; second, that she had no control over their actions; and third, that she had an unblemished record when she herself operated the tavern. The majority holds that it is patently contrary to the evidence to argue that Mrs. Wajda must have been aware of the numerous ordinance violations of which her tenant, Patterson, and her son Lawrence were guilty. In my opinion the inference that she had knowledge of these offenses is overwhelming. Thirty-two neighbors joined in a petition to the city complaining of music blaring through open doors and windows, customers urinating in the street, automobiles and motorcycles racing their engines, and beer cans and papers littering the surrounding area. According to the minutes of the February 12, 1975, meeting of the Consumer Services Committee, one neighbor testified that "[h]e felt sure that Mrs. Wajda knew of everything that was going on then and was a part of it," because she was present with her sons when a complaint was made, and the committee threatened to close the tavern permanently if there were further violations. During the time her son Anthony was operating the tavern on her property, another son, Lawrence, who worked at the tavern with Anthony, was charged with the following offenses:

Violation of Ordinance § 854.190, permitting liquor on the premises,

Violation of Ordinance § 853.090, operating after hours,

Violation of Ordinance § 874.040, permitting gambling equipment on the premises.[1]

Under a plea agreement with the city attorney, Lawrence was convicted of the second and third charges and the first charge was dismissed. I find it hard to believe that the mother, who

---

[1] The Minneapolis Code of Ordinances has been completely recodified. The ordinances under which Lawrence Wajda and John Patterson were charged now are found in Minneapolis Code of Ordinances, cc. 362, 368, 385, and 387.

owned the premises, was totally unaware of the violations and convictions of Lawrence.

After John Patterson became the licensee he was convicted of the following ordinance violations:

Violation of Ordinance § 856.030, permitting liquor on unlicensed premises,

Violation of Ordinance § 854.190, permitting liquor on premises licensed for beer,

Violation of Ordinance § 854.090, remaining open after hours,

Violation of Ordinance § 870.140, operating a disorderly house,

Violation of Ordinance § 874.040, possession of gaming equipment,

Violation of Ordinance § 874.010, allowing gambling on the premises.

The city council specifically found that Mrs. Wajda "knew of these problems and was unable to abate them." I submit that there is compelling evidence to support these findings concurred in by the district court and that there is no basis whatever for charging that the council acted arbitrarily and capriciously in reaching their conclusions. In my opinion this court is simply substituting its findings for those of the council and the district court.

The majority argues that for Mrs. Wajda to attempt to assert any power or control over her tenants would be an impermissible delegation of responsibility. With respect to the sale of intoxicating liquor, the policy of the state is quite to the contrary. In that analogous situation, Minn. St. 340.19(2), imposes penalties on the owner of the premises for a tenant's violations by limiting the further issuance of any license on the premises. Apart from statute, however, it is simply not true that Mrs. Wajda was powerless to control her tenants. Clearly under the law she had a right to cancel her lease where her property was being used

unlawfully. It is inconceivable that such a right would be denied her.

With respect to the claim that she has demonstrated her ability to operate the tavern herself in compliance with the law, it should be noted that she actually did so for only 3 1/2 years, that she is now a 58-year-old widow, and that by her counsel's own admission "because of the close connection ties of having sons, [counsel] felt sure that she will have her sons or daughters to help." The council found that the problems which existed in the past would likely occur again and in my opinion the evidence fully supports that conclusion. It is obvious that a widow of Mrs. Wajda's age will have to depend to an increasing degree on sons who have demonstrated their indifference or inability to observe the law and that she cannot be expected to maintain a constant vigil to prevent the kind of violations her son and Patterson committed. The likelihood of reoccurrences noted by the city council and also by the district court is manifest.

Finally, at oral argument it has been suggested that to deny Mrs. Wajda a license somehow deprives her of property without due process of law. This argument, I submit, is without merit for several reasons. As the majority concedes, no property owner has a constitutional right to operate a beer tavern. If such a license is denied, the property continues to be zoned for nonconforming commercial purposes and is available for lease to other tenants for other commercial uses. The market value of the property remains unaffected.

In the face of the numerous ordinance violations committed by plaintiff's tenant and her son, her demonstrated unwillingness or inability to control the operation of the tavern on her premises, and the gross nature of the disturbances it has inflicted on her neighbors, in my opinion the majority's conclusion that the city council acted arbitrarily and capriciously is wholly without foundation. Accordingly, I would affirm the decision of the district court.

PETERSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

MacLAUGHLIN, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Otis.