David **RUZICH** et al., petitioners, **Respondents,**

v.

**TOWNSHIP OF STUNTZ, et al., Appellants.**

No. 48907.

Supreme Court of Minnesota.

July 3, 1980.

Bischoff, Sellman & Wojciak and Bernard J. Bischoff, Hibbing, for appellants.

Robins, Davis & Lyons, Robert M. Wattson, and John N. Love, Minneapolis, for respondents.

### ORDER

Based upon all the files, records and proceedings herein,

IT IS HEREBY ORDERED that the order of the St. Louis County District Court dated February 21, 1978 be, and the same is, hereby affirmed pursuant to Rule 136.-01(2), Rules of Civil Appellate Procedure.

OTIS, Justice (dissenting).

I would respectfully dissent from the majority decision to summarily affirm the order of the district court directing the Board of Supervisors of the Township of Stuntz to approve the application of Patricia Charon for an on- and off-sale nonintoxicating liquor license. It is my view that the district court erred in concluding that the board, in the exercise of its broad discretion in considering liquor license applications, acted arbitrarily or capriciously. *Country Liquors, Inc. v. City Council of Minneapolis*, 264 N.W.2d 821 (Minn. 1978); *Wajda v. City*

*of Minneapolis*, 310 Minn. 339, 246 N.W.2d 455 (1976).

The record reflects that the establishment presently known as the Midget Bar has been operated as a tavern near Hibbing, Minnesota since the mid-1930's and that David Ruzich obtained ownership in 1973. Thereafter, Ruzich and his brothers operated the business ·until April 1977 when the tavern was leased to John Garrity for a period of four months. The lease was allegedly terminated when Ruzich determined that Garrity was unable to properly manage the tavern.

In mid-1977, Ruzich entered into an agreement with the applicant Patricia Charon for her lease of the premises with the option to purchase the establishment. As lessee, Charon applied to the township board on September 1, 1977 for a renewal of the nonintoxicating liquor license. The Board considered the application at its meeting of October 5, 1977, but the motion to approve the license failed for a lack of a second. Thereafter, Charon requested to be heard at the November 2, 1977 meeting. The hearing was granted, but the application for a renewal of the license was denied.

Petitioners Charon and Ruzich then obtained a writ of certiorari to review the actions of the township board in denying the license. The district court, essentially concluded that the facts presented were remarkably similar to those considered in *Wajda v. City of Minneapolis*, and reversed the decision of the township board, directing it to approve the license. The basis of the decision of the district court was that the township board's decision to deny the application was arbitrary and capricious.

It is my view that while there are factual similarities between this and the *Wajda* case, the decision of the board is not arbitrary when considered in light of the decision in *Country Liquors, Inc. v. City Council of Minneapolis*. There, we stated as follows:

> In this case, the objections voiced by north side residents were not concerned with *past* misconduct associated with the operation of the license applicant's prop-

erty. Rather, their testimony was intended to demonstrate that—in the words of the *Wajda* opinion—"the premises themselves were inherently unsuitable as the location" for a liquor store. Thus the nature of the evidence upon which the city council rested its decision in this case was implicitly approved in the *Wajda* opinion.

264 N.W.2d at 825 (emphasis in original).

The record establishes that while the operation of the bar at its inception may have been consistent with the general area, the neighborhood has been zoned residential for a long period and the tavern is now completely surrounded by private homes and is located on a through street which offers no offstreet parking and minimal side-street parking. Additionally, the board had become increasingly cognizant of objections to the continued operation of the bar in the area.

At its meeting of May 1, 1974, the board approved the renewal of Ruzich's license without discussion. While the application was next approved at the meeting of May 7, 1975, the approval was suspended pending a meeting between Ruzich, the sheriff, and adjoining homeowners to attempt to satisfy numerous complaints made by the residents of that area. Those complaints, as enumerated in the minutes of the board meeting, included littering, heavy traffic, noisy automobiles and trespassing. Additionally, the minutes refer to a petition endorsed by 22 residents seeking to limit the operation of the bar, as well as patron parking. The owners promised cooperation and the application was approved.

The 1976 renewal application met with more substantial neighborhood opposition. Several residents of the area attended the June 2, 1976 meeting and raised objections similar to those presented the preceding year. The board nevertheless approved the application, noting that there had been no actual violations of the license conditions or local ordinances.

The application of John Garrity, Ruzich's lessee, was approved on May 4, 1977. The

board's minutes reflect the receipt of numerous complaints and its intent to examine the license very carefully upon the next application. The petitioner Charon's application was therefore the subject of substantial scrutiny by the board. At the time it was presented, the board considered the opposition expressed by six residents of the neighborhood, as well as complaints related by the sheriff's department. The minutes also reflect Ruzich's position that he had no control of events occurring beyond the confines of his establishment.

This continuing ground swell of neighborhood opposition, together with the substantial change in the character of the area surrounding the tavern undoubtedly led the board to conclude that the premises were inherently unsuitable for the location of this liquor establishment. Undoubtedly, a township board functioning in a rural setting, uniquely close to and undoubtedly responsive to the residents, took all steps necessary to compromise the competing positions and, finally concluded that the residents' objections demonstrated the inherent unsuitability of the location.

For those reasons, together with the fact that the *Country Liquors* case was decided after the district court had rendered its decision, I respectfully would reverse the decision of the district court. As a practical matter, the absence of a reversal would implicitly authorize the owner Ruzich to continue the operation of the tavern by merely obtaining a succession of lessees with no prior experience by which the council could objectively consider applications for renewal of liquor license. The potentially unbridled operation of the establishment in this manner could not have been contemplated by a cumulative analysis of the *Wajda* and *Country Liquors* decisions.

SHERAN, Chief Justice.

I agree with Mr. Justice Otis.

ROGOSHESKE, Justice.

I join in the dissent of Mr. Justice Otis.

WAHL, Justice.

I join in the dissent of Mr. Justice Otis.