TAMARAC INN, INCORPORATED,
Petitioner, Respondent,

v.

The CITY OF LONG LAKE, et
al., Appellants.

No. 51272.

Supreme Court of Minnesota.

Sept. 25, 1981.

Arlo H. Vande Vegte, Long Lake, for appellants.

Lindquist & Vennum and Daryle Uphoff, Minneapolis, for petitioner, respondent.

SCOTT, Justice.

Respondent, Tamarac Inn, Inc., (Tamarac) petitioned the Hennepin County District Court for a writ of mandamus ordering the Long Lake City Council, appellants in this action, to renew respondent's liquor license. The district court granted respondent's petition and ruled the city's denial of renewal to have been arbitrary, capricious, and unreasonable. We affirm.

Tamarac Inn was incorporated in 1976 by Charles L. Kramer (Kramer) for the purpose of purchasing and remodeling a building located in Long Lake, Minnesota. The intent was to operate a restaurant and an on-sale liquor establishment in the building. After investment capital was secured, the development of a restaurant-bar in the upstairs portion of the building and a pub downstairs was begun late in 1976.

Kramer began negotiating with the Long Lake City Council in the summer of 1976 about obtaining liquor licenses for the proposed development. On June 15, 1976, the city council reserved liquor licenses for the project. In December 1976 the city again reserved liquor licenses for an additional 60-day period.

In late December 1976, or early January 1977, the Tamarac's owners decided to concentrate on finishing the pub portion of the building because the remaining amount of remodeling there was less expensive and the equipment needs were minimal. It was also necessary to complete the pub area in order to receive a $15,000 loan from a company which wanted to place game machines in the pub.

On February 15, 1977, Kramer applied for liquor licenses on behalf of the Tamarac, and the city issued the licenses. When the licenses were issued the downstairs pub was complete and the restaurant remodeling was underway; however, the Tamarac was unable, at that time, to obtain the financing necessary for completion of the restaurant. The city council was aware when it issued the licenses that only the downstairs pub was completed and that financing was being sought to finish the restaurant.

The Tamarac experienced severe financial difficulties during the summer and fall of 1977. These difficulties led to Kramer's dismissal as manager and the assumption of managerial responsibilities by Randall Blohm (Blohm), one of the original investors. Despite financial difficulties, the pub was opened in the winter of 1977.

Blohm appeared on behalf of the Tamarac before the Long Lake City Council on December 20, 1977, and requested the renewal of the Tamarac's liquor licenses. He informed the city council that the restaurant was not yet complete and described a number of financial and managerial problems by way of explanation. The licenses were renewed by the city council at their December 20 meeting.

In May 1978, the Long Lake City Clerk sent Blohm a letter stating that the Tamarac's liquor licenses would not be renewed for 1979 unless the restaurant was operating at the time of the renewal request. During 1978 various legal actions against the Tamarac were resolved, a building permit was issued in November for completion of the upstairs restaurant, and work was begun on completion of the remodeling.

In December 1978 the city council again chose to renew the Tamarac's liquor licenses after Blohm presented a schedule calling for a May 1979 completion date on the restaurant. Throughout this period Blohm and other investors were contributing their own capital to the corporation. Work continued throughout 1979 on the remodeling and equipment was purchased for the restaurant operation. The Long Lake building and plumbing inspectors toured the building

on several occasions, and the progress of construction was visible to the general public.

A zoning meeting was held in August 1979, at which time Blohm was informed of some complaints made by neighborhood residents regarding noise at the Tamarac. Following the August meeting, Blohm instituted some operational changes to try to eliminate future complaints.

In or about August 1979, the city rezoned the area where the Tamarac was located, with the effect that new liquor licenses cannot be issued for that location. The new zoning law, however, does permit a currently operating liquor license to be renewed.

In December 1979, the city council held a renewal hearing on all of the Long Lake applications for liquor license renewals. Blohm was present at the hearing. The police chief summarized the police reports for each establishment which sought renewal. All establishments except the Tamarac had their liquor licenses renewed for the next year.

At the time of the denial, the restaurant was substantially complete, and by the February 27, 1980, trial date the city had agreed to stipulate that the Tamarac was a restaurant as defined by the Code of Ordinances of the City of Long Lake.[1]

After the city denied the application for renewal, respondent obtained a peremptory writ of mandamus from the Hennepin County District Court. The peremptory writ was issued on December 28, 1979, to be effective until a trial on the merits was held. After the peremptory writ was issued, the mayor of Long Lake convened a special January meeting of the city council to again consider the renewal of respondent's liquor license. This meeting afforded petitioner notice, an opportunity to be heard, an opportunity to cross-examine the city's witnesses, written reasons for the refusal to renew the license, and written findings. After the January hearing the city

council once again refused to renew the liquor license.

The city contended at trial that its decision not to renew was supported by and based upon the various complaints alleging violation of state liquor laws, and that these complaints demonstrated that respondent was not a fit and proper party to be granted license renewal.

Following a three-day trial on the merits, the trial court issued the respondent's requested writ of mandamus ordering appellants to renew the Tamarac's liquor licenses. The trial court found, *inter alia*, that respondent was unfairly singled out on the basis of the complaints when its conduct was compared to others similarly situated:

52. The Tamarac has never been charged, tried, or convicted of any violation of state liquor laws or ordinances relating to liquor in the Code of Ordinances of the City of Long Lake, nor has the Tamarac or any of its employees ever been charged, tried, or convicted of any offense relating to the use, consumption, or vandalism arising out of or in connection with the operation of the Tamarac.

53. During the year 1979, there were 21 police reports concerning the Tamarac. Two of these reports concerned a record and license check in connection with the application for the renewal of the Tamarac's liquor license for the year 1980. Three of these reports were classified as relating to allegations of possible violations of liquor laws or ordinances.

54. During the year of 1979, there were 18 police reports concerning another establishment, the Flat Pie & Red Eye Saloon (hereinafter "Flat Pie"), that received a license renewal in December, 1979 from the City. Three of the reports concern possible violations of liquor laws or ordinances. During 1979 a Flat Pie employee and the establishment itself was [sic] charged with violating liquor

---

1. *Long Lake City Code* § 1000:002g (1973):

"Restaurant" shall mean any establishment open to the public, employing adequate staff, having appropriate kitchen facilities and dining room with a seating capacity of not less than one hundred (100) seated guests at one time, and is primarily engaged in the business of serving meals to be consumed on the premises.

laws or ordinances. An employee of the Flat Pie had been convicted of violations of liquor laws previously while employed at said establishment.

55. Any material differences between the 1979 police reports for the Tamarac and for the Flat Pie are insignificant both qualitatively and quantitatively.

Order of Hennepin County District Court, No. 762653, March 26, 1980 (granting petition for writ of mandamus). The city appeals, raising the following issues.

(1) Whether the Tamarac Inn, Inc., possessed a sufficient property interest in its existing liquor licenses to require procedural due process rights prior to any refusal to renew the licenses; and, if so,

(2) Whether a failure to hold renewal proceedings comporting with procedural due process in the first instance precluded curing these defects in a second renewal proceeding arguably comporting with the requirements of procedural due process and whether the trial court so held; and

(3) Whether the city council acted arbitrarily and capriciously in refusing to renew respondent's liquor licenses.

■ We move first to the question of whether the city council's refusal to renew the Tamarac's liquor licenses was arbitrary and capricious, since that is dispositive. We have stated in the past that the scope of judicial review of the discretionary acts of municipal authorities is quite narrow. *See Wajda v. City of Minneapolis*, 310 Minn. 339, 343, 246 N.W.2d 455, 457 (1976). Yet, courts retain the right to overturn the discretionary decisions of municipal bodies in certain cases. As we said in *Wajda*: "However, in the rare case, such as the facts herein disclose, where such a denial is patently arbitrary and capricious, we will not hesitate to act in order to prevent manifest injustice." *Id.* at 346, 246 N.W.2d at 459.

■ Unlike *Wajda*, in this matter the trial court found the city's action arbitrary and capricious. In prior decisions we made it clear that *"special deference"* need not be given to trial court review of agency action,

*see Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977) (emphasis added), but instead, this court must "independently [examine] the action of the local governing body to determine its propriety," *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979). Therefore, we do not agree with the respondent's contention that the trial court's decision can only be overturned if we find it to be clearly erroneous. However, we do recognize that district court findings which are the product of firsthand observation of the demeanor of parties and witnesses possess a certain integrity not contained in the written record alone. *See Louden v. Louden*, 221 Minn. 338, 340, 22 N.W.2d 164, 166 (1946). Having conducted our own examination of the record, we come to the same conclusion reached by the district court.

■ The respondent made a substantial investment over a period of years in the restaurant and pub. In spite of numerous financial setbacks, respondent was within days of complying with the city's restaurant requirement when Blohm appeared at the December 1979 license renewal hearing. The city council was well aware of the Tamarac's history and the status of its restaurant renovation when it considered the Tamarac's renewal application; yet, it failed to renew despite having renewed previously when the restaurant was much farther from completion. Denial of renewal on the basis of incompleteness of the restaurant facility under such circumstances is manifestly unjust and illustrative of what this court views as arbitrary and capricious action.

■ Administrative agencies and other licensing bodies have generally established a renewal process which results in license renewal as a matter of course. *See 9 E. McQuillin, The Law of Municipal Corporations* § 26.198a (3d ed. rev. 1978). This is a recognition by the reviewing body that parties who invest substantial amounts of resources in preparing facilities for operation are entitled to a reasonable expectation of the continuing receipt of the benefit conferred by a license. *See, Bisco's, Inc. v.*

*Michigan Liquor Control Commission*, 395 Mich. 706, 716–17, 238 N.W.2d 166, 171 (1976); *see also* 9 E. McQuillin, *supra*, at § 26.198a.

We also find the city's reliance on allegations of liquor ordinance violations indicative of the arbitrary and capricious nature of their decision. From our review of the record, the facts support the respondent's position that there is no legally sufficient reason for treating the Tamarac's application differently from that of the Flat Pie & Red Eye Saloon on the basis of the complaints received about the two establishments.

■ We have held in the past, in connection with applications for special use permits, that similarly situated applicants should receive similar treatment by a municipality. *See Northwestern College v. City of Arden Hills*, 281 N.W.2d at 869; *Hay v. Township of Grow*, 296 Minn. 1, 7–8, 206 N.W.2d 19, 23–24 (1973). Though we do not reach the question of whether the differing treatment accorded the Tamarac rises to the level of an unconstitutional denial of equal protection, the disparate treatment, with no adequate justification, evidences the arbitrary quality of the city's action.

■ In conclusion, we wish to emphasize that this decision should not be interpreted to mean that the city council cannot exercise its discretion and revoke or fail to renew the respondent's liquor licenses in the future, provided serious violations of law occur. We merely hold that the city council must act reasonably in the exercise of its discretion and not use its discretionary authority solely as a means to dispossess a use recently made nonconforming by a zoning change.

■ We therefore need not reach the other two issues raised. Suffice it to say that, from our examination of the record, if due process was lacking as a result of any inadequacies of the December 19, 1979 city council meeting, the subsequent hearing of January 1980 cured the defect.

Affirmed.

1. The applicable standard in this case is set forth in *Wajda v. City of Minneapolis*, 310 Minn. 339, 246 N.W.2d 455 (1976) and *Country*

OTIS, Justice (dissenting).

I dissent from the decision of the majority. I would hold that the plaintiff, Tamarac Inn, Inc., failed to meet its burden of proving that the Long Lake City Council's decision to not renew the plaintiff's application for a restaurant liquor license for 1980 was arbitrary and capricious. Under the facts of this case, I would hold that the trial court should have denied the plaintiff's petition for a writ of mandamus to compel the city council to renew the license.

This controversy arose out of the plaintiff's failure to comply with a condition to which it agreed in December 1976, namely, that the plaintiff would open a restaurant in conjunction with an off-sale liquor establishment in exchange for the council's promise to reserve a restaurant liquor license for the establishment. Although the plaintiff's bar opened for business in early 1977, it did not complete construction of the promised restaurant until after the city council had decided in December 1979 not to renew the plaintiff's liquor license for the following year. The restaurant was substantially completed prior to the mandamus hearing in this matter.

The record shows that the city council's decision was based in part on the plaintiff's breach of its promise to complete the restaurant in a timely manner. The plaintiff's manager had reaffirmed the corporation's promise at renewal hearings before the council in December of 1977 and 1978. The council also based its decision on evidence that was presented at a second hearing concerning numerous police complaints, nuisance problems, and under age drinking that was allegedly occurring at the establishment.

On the basis of the evidence adduced by the council during its three-day hearing in January, 1980, I would hold that the decision not to renew the license was not arbitrary and capricious.[1] Accordingly, I would reverse the decision of the district court.

*Liquors, Inc. v. City Council of City of Minneapolis*, 264 N.W.2d 821 (Minn.1978).