Johannes K. HUYGEN, etc., et al., Respondents,

v.

PLUMS ENTERPRISES OF ST. PAUL, INC., d/b/a Plums, Appellant.

No. C6-84-612.

Court of Appeals of Minnesota.

Aug. 28, 1984.

Edward P. Starr, City Atty., Jane L. Hogan, Asst. City Atty., St. Paul, for respondents.

Thomas J. Laughlin, Nilva & Frisch, P.A., St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal involves nine discrimination claims against Plums Enterprises of St. Paul, Inc., d.b.a. Plums, a bar and restaurant in St. Paul. The complainants are 19 and 20 year olds who were denied admission to Plums because of the bar's policy prohibiting admission of anyone under 21 years of age after 9:00 p.m., unless accompanied by a parent or guardian.

Plums admitted the policy violated St. Paul's anti-discrimination ordinance, St. Paul, Minn. Legislative Code § 183.08 (1983), prior to the hearing before the City's Human Rights Commission (Commission). Plums objected, however, to the relief awarded by the Commission. The dis-

trict court affirmed the Commission's order on March 1, 1984. This appeal followed.

## FACTS

Plums is a bar and restaurant operating in the Highland Park area of St. Paul. Shortly after it opened its doors for business, Dean Vlahos, a co-owner of Plums, noticed the bar was attracting a younger crowd. Almost daily, Vlahos was receiving complaints from area residents about the noise, screeching tires and outdoor urination by the bar's patrons. Vlahos was particularly sensitive to complaints from his neighbors because he was seeking permission from the City Council to operate an outdoor patio at Plums and because another Highland Park area bar had recently lost its liquor license due in large part to residential uproar over the bar's operation.

Vlahos' concern led him to talk with the owners of bars he frequented. Some of these bars had a 21-year-old admission policy, but none of the bars with an admission policy were in St. Paul. Without an investigation of what age group was causing Plums' problems and without contacting any city or state authority, a 21-year-old admission policy was instituted at Plums.

During the approximately six weeks the age admission policy was in effect, all nine complainants attempted to patronize Plums. Seven of the nine were denied admission because they were under 21. The other two complainants chose not to enter Plums because they were with people who were denied admission because of their age. All complainants testified the Plums' employees enforcing the age admission policy were courteous. There is no suggestion that any exceptions to the policy were made. The employees enforcing the policy were all 21, but at least one employee inside the bar was allegedly under 21 years of age.

Nine complaints against Plums and its age admission policy were filed with the Human Rights Department of the City of St. Paul. Notice of the complaints was sent to Plums and an investigator was assigned to the case. Plums maintains the

policy was discontinued within a week of receipt of notice of the complaints. In any event, however, the policy had been discontinued by mid-June when the Department's investigator met with Vlahos and the other owners of Plums.

At the conclusion of its investigation, the Department commenced suit against Plums. Plums admitted violating the anti-discrimination ordinance, but maintained the violations were unintentional and without knowledge of the ordinance.

The City's Human Rights Commission held three hearings on the complaints against Plums. All nine complainants, the City's investigator and Vlahos testified. Hearing Officer Raymond W. Faricy presided over the proceedings.

On January 10, 1984, the Commission issued findings of fact, conclusions of law and order. The order directed:

1. That Plums Enterprises of St. Paul, Inc. adopt and enforce a non-discriminatory policy that conforms to Chapter 183 of the St. Paul Legislative Code.

2. That in the event of a transfer, sale, renewal or exchange of the liquor license of the respondent, this non-discriminatory policy must be made a part of any agreement to transfer, sell, review or exchange the license.

3. That Plums Enterprises of St. Paul, Inc. shall take out advertisements in local newspapers to inform the general public of their change in policy; that these newspapers shall include, but shall not be limited to, the St. Paul Pioneer Press, the St. Paul Dispatch, the Twin Cities Reader and the Village Voice.

4. That Plums Enterprises of St. Paul, Inc. shall pay the Department for its costs of investigation and for the cost of the court reporter at the hearing.

5. That Plums Enterprises of St. Paul, Inc. shall pay Jenifer Robins, Laurie Yorga, Jeffrey White, Tamara Klick, James Forliti, William Shearon and Thomas Wilson, the sum of $600 each as and for punitive damages.

6. That Plums Enterprises of St. Paul, Inc. shall pay Terence Yorga and Colleen Ryan the sum of $400 each as and for punitive damages.

Plums filed a petition for judicial review of the order with the Ramsey County District Court. The petition requested vacation of the Commission's order because:

a. The Order of the Department of Human Rights [sic] of the City of Saint Paul is not supported by substantial evidence in view of the entire record;

b. The Order of the Department of Human Rights [sic] of the City of Saint Paul is based upon errors of law committed at the hearing before the Department;

c. The Order of the Department of Human Rights [sic] of Saint Paul exceeds the statutory authority and jurisdiction of the Department of Human Rights;

d. The Order of the Department of Human Rights [sic] of City of Saint Paul herein is arbitrary and capricious.

The district court agreed the punitive damage awards were excessive but concluded the court's standard of review required affirmance of the Commission's order in all respects.

### ISSUE

Whether the Commission's order exceeded its legal authority, was affected by error of law, unsupported by substantial evidence, or arbitrary or capricious.

### ANALYSIS

1. St. Paul, Minn. Legislative Code § 183.19 (1983) explains judicial review of the Commission's orders as follows:

The director may obtain judicial enforcement of commission orders and any party aggrieved may obtain judicial review of commission orders in the manner provided by Laws of Minnesota for 1965, Chapter 866.

Laws of Minnesota 1965 ch. 866.

Although Minnesota case law defines a special proceeding, *Willeck v. Wil-*

*leck,* 286 Minn. 553, 554 n. 1, 176 N.W.2d 558, 559 n. 1 (1970), there is no single standard of review for special proceedings. The standard of appellate review varies depending on the subject matter of the litigation. Since the present matter involves review of the Commission's order, application of the standard and scope of review for quasi-judicial agency action is appropriate even though the Administrative Procedure Act does not apply to municipal agencies.[1]

▮ As such, the Commission's order will be modified or reversed only if Plums' substantial rights have been prejudiced because the Commission's findings, inferences, conclusions or decisions are: in violation of a constitutional provision; or in excess of the Commission's statutory authority or jurisdiction; or made upon unlawful procedure; or affected by other error of law; or unsupported by substantial evidence in view of the entire record; or arbitrary or capricious.

2. Plums admits its age admission policy violated St. Paul's anti-discrimination ordinance, St. Paul, Minn. Legislative Code § 183.03 (1983).[2] Plums also admits the Commission has the authority to order Plums to adopt and enforce a non-discriminatory policy. Plums challenges the other five remedies ordered by the Commission, however, alleging each to be improper.

(a) *Did the Commission exceed its legal authority by ordering Plums to incorporate the non-discriminatory policy into an agreement to transfer, sell, review, or exchange its liquor license?*

Plums claims the Commission lacked authority to impose conditions on its liquor license. In support of its claims, Plums cites the City's Code and Minnesota case law. The Code section cited, § 308.05, does not exist. While the intoxicating liquor section of the Code, St. Paul, Minn. Legislative Code §§ 409.01–409.18 (1983), does cover the City Council's authority over liquor licenses, it does not prohibit action by other arms of the government.

*Wajda v. City of Minneapolis,* 310 Minn. 339, 246 N.W.2d 455 (1976), cited by Plums, does not support their position either. *Wajda* simply states city councils are vested with broad discretion in determining whether or not to issue a liquor license. *Id.* at 343, 246 N.W.2d at 457. It does not address whether the city council's authority is exclusive.

In passing the anti-discrimination ordinance, the St. Paul City Council conferred broad remedial powers on the Commission. St. Paul, Minn. Legislative Code § 183.18(6) (1983) provides:

> If, after hearing, the panel shall conclude that a violation has occurred, it shall prepare an order which may contain any provision deemed desirable to do justice to the complainant or to prevent further violations, and, in all cases, may also order the respondent to pay an aggrieved party who has suffered discrimination punitive damages in an amount up to $6,000. The order may include damages for mental anguish or suffering in the award of compensatory damages. It may include provisions which require the respondent to rent, sell, or lease particular housing to the complainant, place or reinstate him in a particular job with or without back pay, file periodic compliance reports, or to do any other thing as may be just.

> \*   ·\*   \*   \*   \*   \*

*Id.*

▮ By this provision, the Commission is specifically authorized to order any provision deemed desirable to prevent further violations. Requiring inclusion of the anti-

---

1. *See* Minn.Stat. § 14.02, subd. 2 (1982) which defines an agency as any state officer, board, commission, etc.

2. The ordinance provides:
   No person shall discriminate on the grounds of race, color, sex, creed, religion, national origin or ancestry, age or disability with respect to the access to, use of, or benefit from any public accommodation, or to make or publish any statement evidencing his intent to do so.

discriminatory policy in any agreement to renew, transfer or exchange Plums' liquor license could prevent future violations. It will certainly serve as a reminder to the current owners and will be notice to potential transferees of the City's discrimination prohibition.

(b) *Did the Commission exceed its authority by ordering Plums to advertise abandonment of its discriminatory age policy in local newspapers?*

Plums' major objections to the advertising requirement are: (1) such relief was not requested until closing arguments were made; (2) Plums never advertised its discriminatory age policy in any newspaper; (3) the requirement effectively forces Plums to broadcast the message that 19 and 20 year olds are welcome; and (4) the Village Voice is not a local newspaper.

■ As discussed earlier, the St. Paul City Council conferred broad remedial powers on the Commission. The Commission may order what it deems desirable to do justice to the complainants or to prevent further violations. St. Paul, Minn. Legislative Code § 183.18(6) (1983). This grant of authority is both broad and complete. The Commission is not bound to undo the discrimination by the means that accomplished it nor limited to the remedies requested by a litigant. The Commission has discretion to formulate remedies that effectuate the policies underlying the ordinance. Requiring Plums to advertise abandonment of its age admission policy in local newspapers was well within the Commission's discretionary authority.

■ We do not consider the requirement that Plums advertise in the Village Voice as anything more than an oversight. It is beyond reasonable dispute that the Commission intended to include advertisement in the Highland Villager, not the Village Voice. The latter is not a local newspaper while the former is the community paper in the region of Plums' operation. Since the Commission clearly ordered advertisements in local papers, and the other papers specifically included are local publications, the

order is amended to include the Highland Villager instead of the Village Voice.

(c) *Is requiring Plums to pay the costs of the Department's investigation arbitrary, capricious or otherwise improper?*

After the complaints were filed with the Department of Human Rights, notice of the complaints was sent to Plums. Contemporaneous to sending Plums notice, an investigator from the Department was assigned to the case. By the time the investigator visited Plums, however, the discriminatory age admission policy had been discontinued. Plums maintains termination of its age admission policy made the investigation unnecessary, so assessment of its costs to Plums was improper.

■ Specific procedures for determining whether a human rights violation has occurred are established in St. Paul, Minn. Legislative Code § 183.18 (1983). These procedures include:

(1) The director shall serve upon the respondent by certified mail a complaint, signed by him, which shall set forth a clear and concise statement of the facts constituting the violation, set a time and place for hearing, and advise the respondent of his right to file an answer, to appear in person or by an attorney, and to examine and cross-examine witnesses.

(2) The hearing shall not be less than 20 days after service of the complaint. At any time prior to the hearing the respondent may file an answer. Facts not denied by answer shall be deemed admitted. If the answer sets out new matter, it shall be deemed denied by the director.

(3) The complaint or answer may be amended at any time prior to the hearing with the consent of the opposing party.

(4) Hearings shall be before a panel of three commissioners designated by the chairman, presided over by an attorney who is not a member of the

commission as chairman and law officer.

*     *     *     *     *     *

*Id.* In light of these procedural requirements, it is difficult to imagine when an investigation pursuant to filed complaints would be unnecessary. Even if a violation of the ordinance is admitted, the underlying facts are essential in determining the appropriate remedial action.

Additionally, precluding assessment of the investigation costs could have a disastrous impact on effective enforcement of the ordinance. The alleged violator, the only party possessing all the facts, could foresee the probable discovery of multiple violations and admit a single violation. As a result of this admission, the investigation would either be discontinued or continued at taxpayers' expense. This neither promotes enforcement of the ordinance nor places responsibility for the cost of enforcement on the responsible party.

Plums admits violating the ordinance. Since there is no indication the investigation costs are unreasonable, assessment of these costs to Plums was proper.

(d) *Did the Commission commit an error of law by awarding the complainants' punitive damages?*

In addition to the other authority conferred, the Commission, "in all cases, may also order the respondent to pay an aggrieved party who has suffered discrimination punitive damages in an amount up to $6,000." St. Paul, Minn. Legislative Code § 183.18(6). Pursuant to this authorization, the Commission awarded the seven complainants under age 21 $600.00 apiece and the two complainants over age 21 $400.00 apiece.

Plums maintains the Commission had to meet either the common law or statutory standard before awarding punitive damages. Respondents maintain the ordinance authorizes punitive damages without respect to any external standard.

Prior to 1978, requests for punitive damages were governed by the common law. Under the general common law, "[t]o justi-fy an award for punitive damages, the wrongful act must have been done with malicious motive." *Benson Coop. Creamery Ass'n v. First District Ass'n,* 276 Minn. 520, 528, 151 N.W.2d 422, 427 (1967); *see also, Ward v. National Car Rental System,* 290 N.W.2d 441, 443 (Minn.1980) (punitive damages proper when tortious act was so wanton or malicious as to show a conscious or reckless disregard of another's rights).

In 1978, however, the Minnesota Legislature enacted a statutory provision, Minn. Stat. § 549.20, governing punitive damage awards. *See* 1978 Minn. Laws ch. 738 § 4. Under the statute, punitive damages are awardable in civil actions "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." Minn. Stat. § 549.20, subd. 1 (1982). This standard became effective April 15, 1978 and applies "to all causes of action arising on or after that date." 1978 Minn. Laws ch. 738 § 11.

While no pre-1978 case law interpreting the St. Paul ordinance exists, there is relevant case law interpreting the state human rights law, Minn.Stat. § 363.01 *et seq.* (1982 and Supp.1983). In *City of Minneapolis v. Richardson,* 307 Minn. 80, 239 N.W.2d 197 (1976), the court reviewed a punitive damage award under the 1971 law, which provided in part:

> The panel or examiner may order the respondent to pay the charging party compensatory damages, except damages for mental anguish or suffering, and may also order the respondent to pay the charging party punitive damages in an amount not less than $25 nor more than $100.

Minn.Stat. § 363.071, subd. 2 (1971). Citing *Benson* and other authorities, the court upheld the award, stating "[i]t cannot be disputed that the acts of the police officers in the instant case were * * * sufficiently willful and malicious to subject them to punitive damages." *Richardson, id.* at 91–92, 239 N.W.2d at 204. Thus, even though the cause of action was a special creation

of the Legislature, the general punitive damage standard applied.

The punitive damage provision of the state statute was amended in both 1980 and 1981. In 1980, the punitive damages ceiling was raised to $1000. *See* 1980 Minn. Laws ch. 540 § 4. In 1981, the ceiling was raised to $6000 and Minn.Stat. § 549.20 was incorporated by reference. *See* 1981 Minn. Laws ch. 364 § 2. The 1981 amendments were approved June 1, 1981. As amended, the statute provides:

> In all cases the examiner may order the respondent to pay an aggrieved party, who has suffered discrimination, compensatory damages, including damages for mental anguish or suffering, and, in all cases, may also order the respondent to pay an aggrieved party, who has suffered discrimination, punitive damages in an amount not more than $6,000. Punitive damages shall be awarded pursuant to section 549.20.

Minn.Stat. § 363.071, subd. 2 (1982).

On December 10, 1981, more than six months after the state amendments were approved, the St. Paul City Council amended its human rights ordinance. By the amendment, the punitive damages ceiling was raised to $6000. Conspicuously absent from the amendment, however, is any reference to Minn.Stat. § 549.20.

Respondents maintain the Council's failure to refer to Minn.Stat. § 549.20 in this amendment evidences their intent not to incorporate the statute. We agree. Thus, the question becomes whether the City Council could deviate from the punitive damages standard established by the state. We conclude they cannot.

In *City of Duluth v. Cerveny*, 218 Minn. 511, 16 N.W.2d 779 (1944), the Minnesota Supreme Court stated the simple rule:

> 'A city ordinance, covering a subject also covered by a state law, is valid, if it is consistent with the state law and preserves the standard of regulation as moulded by such general law.'

*Id.* at 521, 16 N.W.2d at 785 (quoting *City of Duluth v. Evans*, 158 Minn. 450, 197 N.W. 737 (1924)). The City's ordinance purports to cover awards of punitive damages, a subject specifically covered by Minn.Stat. § 549.20. The ordinance permits punitive damages to any party who has suffered discrimination. This standard is inconsistent with the willful indifference standard molded by Minn.Stat. § 549.20. The standard in the ordinance is therefore invalid.

Additionally, we note the interplay between state and local human rights commissions contemplated by state law. Minn.Stat. § 363.115 (1982) permits the state commissioner to refer charges to a local commission. Minn.Stat. § 363.116 (1982) permits a local commission to refer matters under its jurisdiction to the state commissioner. Allowing local commissions to award punitive damages under different standards than the state commissioner would be inconsistent with this referral scheme.

## DECISION

The St. Paul City Council conferred broad remedial powers on the City's Human Rights Commission. The Commission was authorized to order and did not abuse its discretion by ordering Plums: (a) to incorporate the non-discriminatory policy ordered into any agreement to renew, transfer or exchange its liquor license; (b) to advertise this change of policy in local newspapers; and (c) to pay the Department's investigation costs. The Commission was also authorized to award punitive damages to the complainants, but the award ordered is invalid because the standard for awarding punitive damages is inconsistent with the state standard, Minn.Stat. § 549.20 (1982).

The requirement that Plums advertise its policy change in local newspapers is amended to replace the Village Voice with the Highland Villager. The award of punitive damages is reversed and remanded for reconsideration in light of Minn.Stat. § 549.-

20 (1982). The Commission's order is affirmed in all other respects.

Affirmed in part, reversed in part and remanded.