In August 2002, James D. King, Jr., and Emma R. King applied to the City of Birmingham ("the City") for a Class I lounge liquor license and a Division I dance permit under the trade name "E J Lounge." The city council considered and denied the application at its regular council meeting on November 5, 2002. Thereafter, the Kings filed a complaint in the Jefferson Circuit Court, seeking a judgment declaring that the City had acted in an arbitrary and capricious manner when it denied their application. The circuit court held a de novo hearing in January 2003 and thereafter entered a judgment in favor of the City, stating that the *Page 803 
Kings' claims for declaratory relief were "not well founded."
The Kings filed a timely postjudgment motion, arguing that the trial court had erred by concluding that the City had not acted in an arbitrary and capricious manner when it denied their application because, they alleged, the City had failed to establish any of the statutory grounds for denying their application. The trial court summarily denied the motion, and the Kings filed a timely notice of appeal to this court. This court transferred the appeal to the Alabama Supreme Court based on lack of subject-matter jurisdiction. The supreme court later transferred the appeal back to this court pursuant to §12-2-7(6), Ala. Code 1975.
The evidence established that the premises for which the Kings sought a liquor license and a dance permit is in the East Lake area of Birmingham and has been the site of a lounge for over 30 years. The property is zoned as "commercial" and is situated between two adult bookstores. In close proximity to the premises are an appliance repair shop, a bank, several fast-food restaurants, a drugstore, a beauty shop, a service station, and an automobile body shop. For many years, the premises had been operated, without complaint from local residents or law-enforcement officials, as a lounge known as the "In-Between Club." However, the most recent licensee of an establishment on the premises, who had no connection with the Kings, had operated a lounge known as "Club L" for two years and had angered the local residents.
The evidence established that there are two apartment complexes across the alley in back of the premises for which the Kings sought a liquor license and a dance permit. Three witnesses — the owner of the apartment complexes, the resident manager of the apartment complexes, and a Birmingham police officer — testified that Club L had been a nuisance. Sgt. Willis Cogman, Jr., testified that he had responded to numerous complaints concerning Club L. The club had been the scene of a shooting and several arrests for intoxication and vandalism. Ronald Rodham, the owner of the apartment complexes, testified that he had experienced so many problems with Club L — gunshots, fights, late-night traffic, loud music, and disputes over parking — that he had hired an off-duty police officer for the security of his tenants. He acknowledged that there had been a lounge on the premises for 30 years and that the problems he described were limited to Club L, which he said catered to "a younger crowd from Gate City."
Patricia Johnson, the resident manager of the apartment complexes, said that she had experienced constant problems with Club L because its patrons parked in the residents' parking lot, threw beer bottles, had car races in the alleyway, and, she thought, caused her tenant-occupancy rate to drop. She testified that there had been no problems with other establishments that had occupied the premises before Club L, and she attributed Club L's being a nuisance to two factors: it attracted a younger, rowdier crowd than the other establishments, and it stayed open past 2:00 a.m. every night of the week. At the time of the Kings' application, Club L had been closed and the premises had been vacant for 18 months.
The Kings bought the premises and made repairs and renovations to the property before applying for a liquor license and a dance permit. Mrs. King testified that if they were granted a liquor license and a dance permit, they planned to operate the lounge on Thursday nights from 6:00 p.m. to midnight and on Friday and Saturday nights from 6:00 p.m. to 2:00 a.m. They intended to open the lounge on Sunday *Page 804 
nights only for special occasions or when the following Monday was a holiday. Mrs. King contrasted the proposed operating hours with those of Club L, which she said had had a private-club license, thus enabling it to remain open every night past 2:00 a.m.
Mrs. King testified that she and her husband have full-time day jobs. She is an agent for American General Insurance Company and her husband is a signalman for Norfolk Southern Railroad. She stated that she and her husband would continue their full-time jobs and would operate the lounge "on the side" because they enjoyed blues music. Mrs. King testified that they expected to cater to an "older crowd," patrons who were over the age of 25. She said they intended to post "No Loitering" and "No Parking" signs and to have a security guard who would "prevent the sort of worries that [the apartment residents] seemed to have" about the operation of a lounge in the neighborhood.
Section 28-1-6(a)(1), Ala. Code 1975, states that the Alabama Alcoholic Beverage Control Board cannot issue a liquor license in certain municipalities, including the City of Birmingham, unless (a) the municipality approves the license, or (b) the circuit court reverses the municipality's denial because
 "the municipal approval was arbitrarily or capriciously denied without a showing of one of the following:
"1. The creation of a nuisance.
 "2. Circumstances clearly detrimental to adjacent residential neighborhoods.
 "3. A violation of applicable zoning restrictions or regulations."
"Clearly, the statute places the burden on the City to show that the denial is supported by one of the three situations stated in [§ 28-1-6(a)(1)(b)]." City of Montgomery v. Glenn,749 So.2d 478, 480 (Ala.Civ.App. 1999). The standard of review in a case governed by § 28-1-6 has been explained by our supreme court:
 "The trial court's findings of fact are presumed to be correct when they are based on ore tenus
evidence. Because § 28-1-6 provides for de novo
review in the circuit court from the disapproval of an application for a license to sell alcohol, the usual presumption in favor of the findings by the city or administrative agency is not applicable here. . . . In the case of an appeal to the circuit court, the statute requires a circuit judge to hear the evidence de novo, i.e., without any presumption in favor of the municipality. . . .
 "On appeal from the order of the circuit court, we are required to indulge every presumption in favor of the trial court's findings of fact. . . . The trial court's judgment in such a case will be affirmed if, `under any reasonable aspect of the testimony, there is credible evidence to support the judgment.' Jones v. Jones, 470 So.2d 1207, 1208 (Ala. 1985); Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13 (Ala. 1989)."
City of Mobile v. Simpsiridis, 733 So.2d 378, 381-82 (Ala. 1999). In the present case, the circuit court summarily denied the Kings' request for relief and made no findings of fact. "When a trial court does not make specific findings of fact concerning a particular issue, an appellate court will assume that the trial court made those findings that would have been necessary to support its judgment, unless those findings would be clearlyerroneous." Ex parte Byars, 794 So.2d 345, 349 (Ala. 2001) (emphasis added). A finding that is unsupported by any evidence is clearly erroneous. Miree Painting Co. v. Woodward Constr. Design, Inc., *Page 805 627 So.2d 389 (Ala.Civ.App. 1992), reversed on another ground,627 So.2d 393 (Ala. 1993). We conclude that a finding by the circuit court that granting the Kings' application would create a nuisance, or produce "[c]ircumstances clearly detrimental to adjacent residential neighborhoods," or constitute a "violation of applicable zoning restrictions or regulations," would have been clearly erroneous because there was no evidence to support such findings. See City of Mobile v. Simpsiridis, supra
(affirming a circuit court's decision to set aside the denial of a liquor license as arbitrary and capricious because the city did not present substantial evidence of any of the three statutory grounds for denial).
The evidence in the present case regarding complaints by law-enforcement officials and nearby apartment residents all dealt with improper conduct on the premises or conduct by patrons of the premises while it was operated as "Club L" by a previous licensee. No evidence indicated that the premises themselves were inherently unsuitable as the location of a lounge serving alcoholic beverages if the lounge were properly managed and lawfully operated. Compare Broughton v. Alabama AlcoholicBeverage Control Bd., 348 So.2d 1059 (Ala.Civ.App. 1977) (holding that the proposed location was improper by reason of its proximity to a school and a church). In fact, all the witnesses agreed that, prior to the licensing of Club L, the premises had been operated without complaint by other licensees. Moreover, the evidence indicated that two circumstances that had made Club L objectionable to adjacent residents — its licensing as a "private club" with unlimited hours and its catering to a younger and presumably rowdier crowd — would not exist if the Kings' license application were approved.
Courts in other jurisdictions have held that the denial of a liquor-license application based solely upon the conduct or reputation of a prior licensee in the same location is arbitrary and capricious. See, e.g., Wajda v. City of Minneapolis,310 Minn. 339, 246 N.W.2d 455 (1976); Anton's Inc. v. City ofMinneapolis, 375 N.W.2d 504 (Minn.Ct.App. 1985); Stefan'sTaverns, Inc. v. New York State Liquor Auth., 25 A.D.2d 824,269 N.Y.S.2d 670 (1966). Instead, each applicant must be evaluated independently of others for whose conduct he is not responsible. In Gerber v. District of Columbia Alcoholic Beverage ControlBoard, 499 A.2d 1193, 1195 (D.C. 1985), the Court of Appeals for the District of Columbia stated:
 "There is no question . . . that the character of the applicant and of the premises for which the license is sought will necessarily differ from one application to the next, and the Board must necessarily evaluate each applicant individually, on a case-by-case basis. We have previously held that the fact that the Board has acted in opposite ways on two license applications for premises that are adjacent to one another is not arbitrary, when the `qualifications of the applicants and the character of the [establishments for which the license is requested] are different.'"
Quoting Sophia's Inc. v. Alcoholic Beverage Control Bd. of theDist. of Columbia, 268 A.2d 799, 801 (D.C. 1970) (emphasis added).
The City concedes that approving the Kings' application would not have caused any zoning problems. The City argues, however, that it presented sufficient evidence for the trial court to find that approving the Kings' application would create a nuisance and would produce circumstances clearly detrimental to adjacent residential neighborhoods. The City contends that the circuit court's conclusion that the denial of the Kings' *Page 806 
application was not arbitrary and capricious is supported by evidence concerning both the history of past criminal conduct at the premises and disturbances caused by patrons of other establishments on the premises. We disagree.
Much of the evidence regarding the operation of Club L was simply not probative of whether the Kings' proposed lounge would constitute a nuisance or would produce circumstances clearly detrimental to the adjacent apartment residents. The City's own witnesses conceded that the existence of a lounge serving alcohol at the site had created "no problems" for most of the 30 years that such a lounge had been licensed there. It was only the most recent licensee's manner of operating its establishment at the site that had created problems for the adjacent residential neighborhood. Speculation that the Kings might operate their lounge in the same manner as the proprietor of Club L had done is insufficient to establish circumstances "clearly detrimental" to adjacent residential neighborhoods. See City of Mobile v.Simpsiridis, 733 So.2d at 381 (indicating that a city councilman's "concern, without any evidence to support it, that the issuance of a license at these premises might increase crime and loitering in the area" was insufficient to establish circumstances "clearly detrimental" to adjacent residential neighborhoods).
In Circus Disco, Ltd. v. New York State Liquor Authority,51 N.Y.2d 24, 35-36, 409 N.E.2d 963, 969, 431 N.Y.S.2d 491, 497
(1980), the New York Court of Appeals held that "[d]enial of a license on the speculation that it will be operated in violation of law is impermissible." (Emphasis added.) The court explained:
 "That a license may not be denied for such a reason does not mean that area residents are without remedy. As already noted, the authority may step in if what is now feared becomes fact. Moreover, the residents themselves may obtain an injunction . . . if the premises do in fact become a . . . nuisance."
51 N.Y.2d at 36, 409 N.E.2d at 969, 431 N.Y.S.2d at 497. Seealso Wajda v. City of Minneapolis, 310 Minn. at 344,246 N.W.2d at 458, in which the Minnesota Supreme Court stated:
 "If the city's speculations as to Mrs. Wajda's incapacity to properly operate the premises are borne out by actual experience, the city would always have the power to rescind the license. . . . Such speculations afford no cognizable basis for the refusal to issue the license in the first place, however."
Because there was no evidence to support the City's denial of the Kings' application for a lounge liquor license, the City's decision was arbitrary and capricious. The circuit court erred by concluding otherwise and denying the Kings the relief they sought. The judgment of the circuit court is reversed, and the cause is remanded for proceedings consistent with the principles discussed in this opinion.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents, without writing. *Page 807