**COUNTRY LIQUORS, INC., et al., petitioners, Appellants,**

v.

**CITY COUNCIL OF the CITY OF MINNEAPOLIS, et al., Respondents.**

**No. 47753.**

Supreme Court of Minnesota.

April 7, 1978.

Wiese & Cox, Donald E. Wiese and Richard J. Johnson, Minneapolis, for appellants.

Walter J. Duffy, Jr., City Atty., Robert J. Alfton, Asst. City Atty., Minneapolis, for respondents.

Heard before ROGOSHESKE, PETERSON, and TODD, JJ., and considered and decided. by the court en banc.

TODD, Justice.

Country Liquors, Inc., purchased an off-sale liquor business and sought to have the off-sale license transferred to its name in a new business location at 1810 Emerson Avenue North in the city of Minneapolis. The new location met the minimum standards required by Minneapolis ordinance. Hearings were held at which public opposition to the proposed location was expressed. As a result, the city council declined to approve the transfer of the license to the new location. We affirm.

Country Liquors, Inc., is a Minnesota corporation organized by John Sallblad, his wife Goldia, and his son Karl. All three individuals are respected members of the north Minneapolis area. They purchased an off-sale liquor business which was terminated at its existing location when its building was acquired by the state highway department in condemnation proceedings. The Sallblads desired to relocate the business to property they owned at 1810 Emerson Avenue North and filed the necessary transfer application with the city council. At the time the application was filed, the proposed new location was not in compliance with Minneapolis Ordinance No. 362.400, which provides in part:

"No liquor license shall be issued for any building, room or place within three hundred (300) feet from any public or parochial school, or church, said distance to be measured in a straight line from the building in which such school or church is conducted to the main public entrance of the premises for which license is sought."

Shortly thereafter, however, the Sallblads submitted plans for the structural modification of their building which would have moved the main entrance to a point more than 300 feet from a church building. It is undisputed that the proposed remodeling would have brought the building into compliance with all applicable legal requirements.

The application was immediately referred by the city council to its standing committee on consumer services for further investigation and recommendation. The consumer services committee first considered the application at its regularly scheduled meeting on September 22, 1976. Additional consideration was given the application at the committee's October 6 and 27 meetings. At each of these sessions, a number of north Minneapolis residents appeared and spoke in opposition to the license application.[1] The minutes of the October 27 meeting show that as of that date appellants had still failed to submit all of the information requested by the police license inspector. However, no official action was taken on the application at that time.

On October 29, formal notice was served on appellants to appear at a November 10 committee meeting and show cause why their application should not be denied for reasons appearing in the notice. Counsel for Country Liquors appeared at that meeting and discussed his clients' building and remodeling plans. He also made specific note of the fact that the structure was in technical compliance with all applicable code requirements. Again, several representatives of north side community organizations voiced opposition to appellants' application. The committee ultimately postponed its final decision, pending receipt of additional documentation in support of the generally unfavorable response to the application which had developed.

The application was given final consideration at the committee's November 22 meeting. Again, counsel for Country Liquors was present and argued in support of the application, and again, neighborhood residents expressed their opposition. A motion to deny the application was duly made and passed. The committee's findings, conclusions, and recommendations were submitted to the entire city council, which, on November 24, voted to deny appellants' application.

Appellants petitioned the district court for a writ of certiorari to review the decision of the city council and for a writ of mandamus to compel the council to approve the transfer and relocation of the license at the proposed location. The trial court, following hearing, dismissed the writs.

The issues presented on appeal are:

(1) Was the action of the Minneapolis City Council denying the transfer of the liquor license arbitrary and capricious, and unsupported by the evidence?

(2) Did the hearings held by the city council on the subject of the proposed transfer deny appellants procedural due

1. Residents' opposition was based generally on the potentially adverse impact of the proposed liquor store on a number of community programs and institutions.

process of law by failing to afford appellants adequate notice and an opportunity to cross-examine the persons who expressed disapproval of the transfer?

1. Appellants argue that since their application met the standards of the applicable ordinance, the city council was compelled to approve the transfer of the license to the proposed location. This position misconstrues the ordinance. The requirements established by the ordinance are minimum standards. Unless an applicant can meet these minimum standards, his application cannot be considered at all. Where the minimum requirements are satisfied, the council must consider the application, but is by no means divested of its legislative authority and responsibility to pass upon the merits of the application. In *Wajda v. City of Minneapolis*, Minn., 246 N.W.2d 455, 457 (1976), we specifically noted, contrary to appellants' assertion, that a city council is vested with "broad discretion" in its consideration of a liquor license application. Accord, *Polman v. City of Royalton*, Minn., 249 N.W.2d 466 (1977); *Paron v. City of Shakopee*, 226 Minn. 222, 32 N.W.2d 603 (1948).[2]

We delineated the scope of judicial review of city council discretionary action in our *Wajda* decision. In that case, the city declined to issue a 3.2 beer license because of complaints from residents concerning the nuisance caused by the previous operation of the establishment in question. Characterizing the decision as "rare," this court reversed the trial court and ordered that the license be issued. This holding was based on the court's finding that all of the evidence upon which the city council had relied related solely to the operations of previous proprietors and was not fairly probative of Mrs. Wajda's ability to conduct a peaceful enterprise. Concerning the scope of our review, we stated (246 N.W.2d 457):

"In considering these issues, we first observe that a city council is vested with broad discretion in determining whether or not to issue or renew a 3.2 beer license, and a court's scope of review of such a determination is a narrow one, which should be exercised most cautiously. See, generally, Ryne, Municipal Law, § 27–8; 10A Dunnell, Dig. (3 ed.) § 4911. Appellant has cited no cases, nor have we found any, where this court has reversed a decision of a legislative body denying a liquor or beer license application. * * * *"

We further stated (246 N.W.2d 459):

"As indicated above, the scope of judicial review when the denial of a license application is appealed is very narrow, and this court will normally sustain such discretionary decisions by municipal bodies. However, in the rare case, such as the facts herein disclose, where such a denial is patently arbitrary and capricious, we will not hesitate to act in order to prevent manifest injustice."

We reaffirm these statements, and the burden is on appellants to demonstrate the arbitrariness of the council's action.

On the facts of this case, the city council's decision to deny appellants' transfer application can hardly be described as arbitrary or capricious. The council's action was the result of specific objections raised by community residents whose lives would be directly affected by the proposed liquor outlet. We would be seriously misguided to characterize the council's sensitivity toward the special concerns of the north Minneapolis community as arbitrariness. Indeed, the very reason for allowing the council substantial latitude in these matters is to permit adequate consideration of unusual circumstances.

Appellants, however, read the *Wajda* decision as authority for the proposition that the denial of a license may not be predicated upon residents' complaints in the nature

2. Appellants have cited several decisions from other jurisdictions which purport to limit the discretion of a city council to reject liquor license applications. Examination of these decisions reveals, however, that they were predicated on statutes which expressly restricted or eliminated city council discretion. See, e.g., *In re Obradovich's Appeal*, 386 Pa. 342, 126 A.2d 435 (1956); *Beverly Grill, Inc. v. Crow*, 133 W.Va. 214, 57 S.E.2d 244 (1949).

of projected ill effects on their neighborhood. This interpretation is erroneous. Our opinion in that case did not establish a rule of general application curtailing the evidentiary weight to be accorded citizen complaints in these proceedings. What troubled this court in *Wajda* was the fact that the subject matter of the residents' complaints, upon which the city so heavily relied, was not rationally related to Mrs. Wajda's personal qualifications as a license applicant. In fact, the very passage from the *Wajda* opinion quoted in appellants' brief highlights the distinction between the narrow matter at issue there and here (246 N.W.2d 459):

> "The complaints lodged by neighbors during the present proceedings all dealt with the improper conduct of the business and of its patrons while it was operated by the two preceding licensees. *No substantial evidence indicated that the premises themselves were inherently unsuitable as the location of a tavern* if the tavern were lawfully and properly managed and operated. We therefore hold that the city council's second reason for denying Mrs. Wajda's 3.2 beer license application is also clearly arbitrary, capricious, and unreasonable." (Italics supplied.)

In this case, the objections voiced by north side residents were not concerned with *past* misconduct associated with the operation of the license applicant's property. Rather, their testimony was intended to demonstrate that—in the words of the *Wajda* opinion—"the premises themselves were inherently unsuitable as the location" for a liquor store. Thus, the nature of the evidence upon which the city council rested its decision in this case was implicitly approved in the *Wajda* opinion. We conclude that the city council properly exercised its legislative function in refusing to approve Country Liquors' transfer application.

2. Appellants allege that their due process rights were violated because they did not receive notice of each meeting at which the consumer services committee considered their application, and because they were not permitted to cross-examine the community residents who opposed the application. The threshold requirements for entitlement to due process protections were reviewed by the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In that case, the Board of Regents of Wisconsin State University declined to renew the contract of a nontenured teacher. Pursuant to university rules, this action was taken without a hearing of any kind. The Supreme Court affirmed the action of the regents, holding that a nontenured teacher's interest in contract renewal is not one to which procedural due process requirements apply.

In reaching this conclusion, the Supreme Court first observed (408 U.S. 569, 92 S.Ct. 2705, 33 L.Ed.2d 556):

> "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite."

Protected "liberty" interests were described as follows (408 U.S. 572, 92 S.Ct. 2706, 33 L.Ed.2d 558):

> " 'While this Court has not attempted to define with exactness the liberty * * guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized * * as essential to the orderly pursuit of happiness by free men.' *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042. * * *
>
> \*   \*   \*   \*   \*   \*

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'
* * *

" * * * In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's 'good name, reputation, honor, or integrity' is at stake."

Due process "property" interests were given the following general definition (408 U.S. 577, 92 S.Ct. 2709, 33 L.Ed.2d 561):

" * * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather *they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law*—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Italics supplied.)

■ In view of the *Roth* decision, we hold that appellants had neither a liberty nor property interest in the dormant license they purchased and sought to have transferred. With respect to the liberty interest, the city council's refusal to allow the license transfer casts no shadow on appellants' reputation or personal character. The denial was grounded on the characteristics of the neighborhood rather than appellants' specific qualifications or lack thereof. Also, there is nothing which would prevent appellants from renewing their transfer application for Country Liquors in a different location.

Likewise, under Minnesota law there is no property right in a liquor license. This court has repeatedly stated that "no person has a vested property right to engage in or continue to engage in the liquor business." *Arens v. Village of Rogers*, 240 Minn. 386, 401, 61 N.W.2d 508, 519 (1953), appeal dismissed, 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954). See, also, *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229 N.W.2d 144 (1975); *Sabes v. City of Minneapolis*, 265 Minn. 166, 120 N.W.2d 871 (1963); *Anderson v. City of St. Paul*, 226 Minn. 186, 32 N.W.2d 538 (1948); *Paron v. City of Shakopee, supra; Abeln v. City of Shakopee*, 224 Minn. 262, 28 N.W.2d 642 (1947). Thus, whether or not a *tacit* property right in an existing license could be identified for due process purposes (see, *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 [1972]), it is plain that appellants cannot be said to have possessed such an interest in their inactive off-sale license.

Accordingly, we hold that the city council proceedings for the consideration of Country Liquors' transfer application were not constitutionally defective.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.