**Irving BIRD, et al., Appellants,**

**v.**

**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, etc., et al., Respondents.**

**No. C5–85–756.**

Court of Appeals of Minnesota.

Oct. 8, 1985.

John D. Undem, International Falls, for appellants.

Hubert H. Humphrey, III, State Atty. Gen., Linda F. Close, Deputy Atty. Gen., St. Paul, for respondents.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This is an appeal from a summary judgment determining that the cancellation of appellants' used automobile dealer's license without notice and a hearing was a discretionary act, and that the respondents were therefore immune from suit pursuant to the Tort Claims Act, Minn.Stat. § 3.736 (1984). We affirm in part, reverse in part and remand for trial.

## FACTS

Appellants Frances and Irving Bird reside in International Falls, Minnesota and own a used automobile dealership known as Second Bridge Auto Sales. In November 1983, Irving applied to the Department of Public Safety (Department) for renewal of the Birds' dealer's license. The renewal instructions which Irving signed required that "all business records [be] available for inspection."

In January 1984 a dealer inspector discovered a sales record indicating that the Birds might have sold a new vehicle. When the inspector asked to see their purchase records, the Birds refused to disclose

the records. The inspector subsequently informed the Department that the Birds had failed to disclose the requested records, and on February 9, 1984 the Department mailed the Birds a letter indicating that their dealer's license certificate and plates were "cancelled * * * and * * * no longer valid for use," due to their failure to disclose the records. The letter stated that the Birds' license could be reinstated after examination of the records, but that the license and plates should be surrendered to the Department. The letter continued:

> Your failure to comply with the requests of the Registrar could. result in the suspension and/or revocation of your dealer license.

The Birds received no prior notice or opportunity to object to the cancellation. Upon receipt of the letter of February 9, appellants sought and obtained a temporary restraining order, notice of which was served upon the Department on February 17. On that same day, the Department mailed a second letter to the Birds, indicating that because their license had been cancelled, their continued operation of the dealership was in violation of Minnesota law. The letter stated:

> At the present time you are not licensed with the State of Minnesota to do any motor vehicle business.

Copies of this letter were mailed to the dealer inspector, the local sheriff, the county attorney and the captain of the local state patrol.

After receiving notice of the temporary restraining order, the Department by letter of February 22 informed the Birds that their license and plates had been reinstated. Copies of this letter were also sent to the above persons. A hearing on the matter was set, and on June 4, 1985 an examiner determined that the vehicle in question was new, requiring payment of appropriate taxes. The examiner revoked the Birds' license but indicated that the revocation would be rescinded upon disclosure of the purchase price of the new vehicle and payment of the tax.

The Birds commenced the present action against the Department and its members on February 23, 1984, alleging that they had been deprived of due process and defamed as a result of the Department's second letter of February 17. The Department brought a motion for summary judgment, claiming, *inter alia*, that the cancellation of the Birds' license was a discretionary act, rendering it immune from suit under the Tort Claims Act, Minn.Stat. § 3.736 (1984). The trial court agreed and ordered that summary judgment be entered, finding that the decision to cancel appellants' license was discretionary.

## ISSUES

1. Was the cancellation of the Birds' used automobile dealer's license without notice and a hearing a discretionary act which rendered the Department immune from liability under the Tort Claims Act?

2. Does the Birds' complaint state a cause of action against the Department for defamation?

3. Does the Birds' complaint state a cause of action for violation of their rights under 42 U.S.C. § 1983?

4. Is the Department a "person" for purposes of a section 1983 action?

## ANALYSIS

### I.

■ Minnesota's Tort Claims Act provides in part:

> Without intent to preclude the courts from finding additional cases where the State and its employees should not, in equity and good conscience, pay compensation for personal injuries or property losses, the legislature declares that the state and its employees are not liable for the following losses:
>
> * * * * * *
>
> (b) Any loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused;

Minn.Stat. § 3.736, subd. 3(b) (1984). This doctrine recognizes that the judiciary should not second-guess acts of the state which involve the exercise of judgment or discretion. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982). There appears to be no clear cut standard for determining whether an act is discretionary or merely ministerial. *Ostendorf v. Kenyon*, 347 N.W.2d 834, 837 (Minn.Ct.App.1984), citing W. Prosser, *A Handbook on the Law of Torts* § 132 at 990 (4th ed. 1971). However, the Minnesota Supreme Court has indicated:

> The crucial focus is upon the nature of the act undertaken. Decisions intended to be protected by discretionary immunity are those made upon the planning level of conduct.

*Larson v. Independent School Dist. No. 314, Braham*, 289 N.W.2d 112, 120 (Minn. 1979). A ministerial duty, on the other hand, has been described as follows:

> A ministerial duty is one in which nothing is left to discretion, a simple, definite duty arising under and because of stated conditions and imposed by law. The idea has been put in this language. "Official duty is ministerial, when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts."

*Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937) (citations omitted.)

The trial court determined that the cancellation of the Birds' license was a discretionary act, calling for an exercise of independent judgment. On this basis alone, the court ordered that summary judgment be entered in favor of the Department.

The Birds argue that although the Department's actual decision to cancel their license was discretionary, the duty to provide them with notice and a hearing prior to cancelling their license was ministerial. The Birds therefore conclude that the Department is not immune from suit under the Tort Claims Act.

■ We agree that the Department had a duty to provide the Birds with notice and a hearing prior to cancelling their license. Minn.Stat. § 168.27, subd. 13 (1984) specifically provides:

> The registrar of motor vehicles, upon his own motion or upon the complaint of another, *shall* prepare and cause to be served upon the licensee complained of, a written notice or complaint setting forth, in substance, the violations charged, a statement of the deficiencies which exist and any corrective action deemed appropriate. Said notice *shall* include a statement that in the event corrective action is deemed appropriate and corrective action is not taken, the dealer's license may be suspended or revoked. The notice *shall* require the licensee to appear at the time and place fixed therein before the Registrar or inspector and show cause why his license should not be suspended or revoked.
>
> The registrar *shall*, at the same time and place fixed in the notice, proceed to hear and determine the matter on its merits. All hearings shall be conducted in accordance with the provisions of chapter 14 * * *. (emphasis supplied.)

The term "shall" is mandatory, Minn.Stat. § 645.44, subd. 16 (1984); thus, the above language clearly imposes a duty upon the Department to provide notice and a hearing prior to revoking or suspending a license.

■ Nonetheless, we note that the legislature has not included a remedy for damages in the above statute. Since the above statute therefore does not create a cause of action in tort for deprivation of due process and since the Minnesota Supreme Court has not as yet recognized a tort of this nature, we decline to do so here. Because there is no tort in Minnesota for deprivation of due process, the trial court's reliance on the Tort Claims Act and the discretionary/ministerial distinction in this instance was erroneous.

Although the Birds cannot recover damages in tort for the Department's failure to provide them with notice and a hearing, they were not without a remedy. Equitable relief was available to them, and they did request and obtain an injunction which reinstated their license temporarily

and which required that a hearing be held to determine whether their license should have been cancelled.

The Birds' complaint states several other claims for relief. Those allegations were addressed in the Department's motion for summary judgment; however, the additional issues were not reached by the broad brush of the trial court's order which merely indicated that because the Department's acts were discretionary, the Birds' cause of action was "in all things denied." Because of their significance, these issues will be addressed by this court.

## II.

The Birds claim they were defamed as a result of the notice that the Department employees sent to the dealer inspector, the local sheriff, the county attorney and the captain of the local state patrol. The notice indicated that the Birds were continuing to operate their business even though their license had been cancelled. In its motion for summary judgment, the Department argued in the alternative that its actions were privileged, either absolutely or qualifiedly, that the act of sending the notice was discretionary, and that in any event the publication was true.

██ In *Matthis v. Kennedy*, 243 Minn. 219, 67 N.W.2d 413 (1954), the supreme court discussed the law of defamation and the privileges which have evolved:

> We are concerned here with the law of defamation, the fundamental basis of which is that one is liable for an unprivileged communication or publication of false and defamatory matter which injures the reputation of another. Privileged defamatory matter is divided into two general classes: (1) That which is absolutely privileged, and (2) that which is qualifiedly and conditionally privileged. Absolute privilege means that immunity is given even for intentionally false statements, coupled with malice, while a *qualified or conditional privilege grants immunity only if the privilege is not abused and defamatory statements are publicized in good faith and without malice.*

*Id.* at 222–23, 67 N.W.2d at 416 (emphasis added). A top-level cabinet-type official in state government has an absolute privilege to communicate a defamatory statement in the performance of his official duties. *Johnson v. Dirkswager,* 315 N.W.2d 215 (Minn.1982). However, in this instance the allegedly defamatory statement was published by public employees who did not hold top-level positions. Statements by such persons are only granted a qualified privilege. *Peterson v. Steenerson,* 113 Minn. 87, 129 N.W. 147 (1910); Restatement (Second) of Torts § 598A (1976).

Whether or not the statements were made in good faith and without malice is a question of fact, which is inappropriate for summary judgment. Likewise, whether or not the statements contained in the notice were true would more appropriately be determined by the trier of fact. *See Utecht v. Shopko Department Store,* 324 N.W.2d 652 (Minn.1982); *Anderson v. Kammeier,* 262 N.W.2d 366, 371 (Minn.1977). *See also Johnson v. Dirkswager,* 315 N.W.2d 215, 218–19 (Minn.1982).

██ The Department employees cannot rely upon the provisions of the Tort Claims Act to shield them from the Birds' claim of defamation. The evolving doctrine of defamation law, as expressed by the above-cited cases, speaks only in terms of absolute or qualified privileges. To hold on the one hand that the Department's employees are only qualifiedly privileged, while considering on the other hand whether they are absolutely immune due to the discretionary nature of their acts, would be a contradiction which we cannot believe was intended by either the Minnesota Supreme Court or the legislature. We are directed to no Minnesota Supreme Court decision which has held even by inference that the Tort Claims Act might provide immunity from a claim of defamation.

██ Because the Department employees have only a qualified privilege with respect to the Birds' claim of defamation, we remand for the factual determination of

whether the statements contained in the notice were made in good faith and without malice. We also remand for consideration of the Department employees' defense of truth both as to verbal accuracy and the underlying implication of the statement contained within the notice of cancellation. *See Johnson v. Dirkswager,* 315 N.W.2d 215, 218–19 (Minn.1982).

### III.

The Birds also allege a violation of their constitutional rights under 42 U.S.C. § 1983 which provides a remedy for deprivation of a federally protected right by a person or persons acting under color of state law. In opposition to this claim, the Department employees argue that a section 1983 action is inappropriate here because the Birds were not deprived of any liberty or property interest.

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the United States Supreme Court indicated that denial of procedural due process is actionable under section 1983. *Id.* at 266, 98 S.Ct. at 1053. However, even if such action is cognizable, a plaintiff must allege a liberty or property interest. *See Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Minneapolis Auto Parts Co. v. City of Minneapolis,* 572 F.Supp. 389, 395 (D.Minn.1983); *Raskey,* 553 F.Supp. at 632; *Cable Communication Board v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658, 666 (Minn.1984).

We find that the Birds had a property interest in their auto dealer's license. "Property interests" were explained in *Board of Regents v. Roth,* 408 U.S. at 578, 92 S.Ct. at 2709:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

In this instance, we believe that for purposes of due process the legislature has provided a used motor vehicle licensee with a legitimate claim of entitlement to any existing license for the period of its duration. This claim of entitlement is evidenced by the legislature's decision to require notice and a hearing before the Department may suspend or revoke a dealer's license. Minn.Stat. § 168.27, subd. 13. Such notice and hearing is not also required for an initial application for a license or for the renewal of an existing license, and we recognize that those situations are distinguishable. Indeed, upon several occasions when a licensee has claimed a property interest in the initial application for or renewal of a license, the Minnesota Supreme Court has stated that a vested property interest in such license would not be recognized. *See Cable Communications Board,* 356 N.W.2d at 666 ("[r]espondent had no property interest at stake * * * because it had a mere expectation of and desire for a cable franchise, but no legitimate claim of entitlement to a franchise award * * *."); *Country Liquors, Inc. v. City Council of City of Minneapolis,* 264 N.W.2d 821, 826 (Minn.1978) (there is no property interest in an unissued liquor license); *State v. City of Austin,* 246 Minn. 514, 519, 75 N.W.2d 780, 784 (1956) (a prior expired pinball machine license was *functus officio* and did not entitle licensee to greater renewal rights than other applicants).

We recognize that in several cases the Minnesota Supreme Court has indicated that a liquor licensee has no property right in his license. *Hymanson v. City of St. Paul,* 329 N.W.2d 324, 326 n. 1 (Minn.1983); *Country Liquors,* 264 N.W.2d at 826. This conclusion has been reached despite the fact that the liquor licensing statutes also entitle a licensee to notice and a hearing prior to revocation of his license. In *Hymanson,* the supreme court indicated:

> The notice and hearing requirements [required by the liquor license statute] rise above those constitutionally mandated. Under Minnesota law, there is no property right in a liquor license. *Country Liquors, Inc. v. City Council of Minneapolis,* 264 N.W.2d 821, 826 (Minn.1978), *quoting Arens v. Village of Rogers,* 240

Minn. 386, 401, 61 N.W.2d 508, 519, *appeal dismissed,* 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954): "[N]o person has a vested property right to engage in or continue to engage in the liquor business."

*Id.* at 326, n. 1. *Hymanson* also involved a situation where a license was being revoked. However, we find that the policy reasons for determining that there is no property right in a liquor license are absent here.

The Minnesota Supreme Court has consistently adhered to a policy of granting to municipalities a broad discretion in matters involving liquor licenses. The policy emanating from the supreme court's decisions reflects a concern for the abuse which could result from the dispensation of liquor. As stated in *Arens v. Village of Rogers,* 240 Minn. 386, 61 N.W.2d 508 (1953), regarding the regulation of the liquor business:

> As it is a business attended with danger to the community, it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit its evils.

*Id.* at 405, 61 N.W.2d at 521, (quoting from *Crowley v. Christensen,* 137 U.S. 86, 91, 11 S.Ct. 13, 15, 34 L.Ed. 620 (1890)). Restrictions imposed upon liquor establishments are particularly necessary to protect the safety, health and morals of the general public. The statutes regulating liquor sales are permeated with a recognition that this strict regulation and control is necessary for the public good. These same public policy considerations are absent here, where the business being regulated is that of used motor vehicles, which business is not attended with the same potential for abuse as in the liquor cases.

 We conclude that the Birds have a property right in their existing dealer's license for due process purposes. Thus their license could not be revoked by the Department without notice and an opportunity to be heard. Because of this property right, the due process violation comes within in section 1983.

IV.

 Finally, we hold that the Department of Public Safety itself is not a "person" which may be sued under section 1983. In *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the United States Supreme Court held that a section 1983 claim was barred against a state and its departments:

> There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordon,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed. 662 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Worcester County Trust Co. v. Riley,* 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937).

*Id.* at 782, 98 S.Ct. at 3057. *Pugh* was subsequently cited with approval in *Quern v. Jordan,* 440 U.S. 332, 339–40, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). However, the eleventh amendment does not bar an action against a state official where the officer acted beyond the scope of his statutory authority. *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 689, 102 S.Ct. 3304, 3317, 73 L.Ed.2d 1057 (1982). Such action cannot require payment from the state treasury. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

In reaching this conclusion, we are mindful of the recent Michigan Court of Appeals decision of *Karchefske v. Department of Mental Health,* 143 Mich.App. 1, 371 N.W.2d 876 (1985), which holds that a state is a person for purposes of a section 1983 claim. This holding is at complete variance with the position of the United States Supreme Court in *Quern* and *Pugh* and is neither persuasive nor controlling.

**DECISION**

Reversed and remanded for trial in accordance with the views expressed in this opinion with respect to the defamation

claim and the section 1983 claim against the Department employees only. The Department of Public Safety itself is dismissed as a party.

Affirmed in part, reversed in part and remanded for trial.