**KAYO OIL COMPANY, d.b.a.**
**Jet, Appellant,**

**v.**

**CITY OF HOPKINS, Respondent.**

**No. CO–86–1243.**

Court of Appeals of Minnesota.

Dec. 23, 1986.

James M. Campbell, Campbell and Costello, St. Paul, for appellant.

Jerre A. Miller, Vesely, Miller & Steiner, Hopkins, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment of the trial court dismissing plaintiff's complaint. Originally, Kayo Oil Co. appealed from the trial court's denial of a motion for summary judgment. That appeal was dismissed as taken from an unappealable order. Subsequently, the trial court granted appellant's ex parte motion for an order for judgment dismissing the complaint. Appellant filed a notice of appeal from the order for judgment with the district court on June 30, 1986. Judgment was entered July 8, 1986, and appellant timely filed a notice of appeal from the judgment with this court on July 22, 1986. We affirm.

## FACTS

The material facts in this case are undisputed. Appellant Kayo Oil Co., doing business as "Jet," has been a licensed gas station since 1953. In 1983 appellant was granted a license for the sale of groceries.

In 1984 appellant applied with respondent City of Hopkins for an off sale 3.2 beer license. The application was denied, based on the following findings of the City Attorney:

1. The applicant owns and operates a gasoline service station within the City of Hopkins selling and dispensing products and auto supplies to the general public including incidental packaged foods and groceries.

2. The intention of the applicant is to sell packaged 3.2 beer from the same premises in connection with its gasoline service station operation.

3. The sale to the public of packaged 3.2 beer is presently limited by license to grocery stores and supermarkets within the City of Hopkins.

4. A policy previously established and followed by the City of Hopkins recognizes the sale of such product to [be] appropriate and limited to grocery stores and supermarkets where purchase of such product is controlled and supervised and the consumption of such product on such premises is disallowed and prohibited.

5. The opportunity to control and enforce violations concerning the laws and regulations with respect to the sale of such product from premises principally constructed, used and operated as service and gas stations for vehicles presents increased difficulties for both seller and the enforcement authority of the City of Hopkins.

6. Inasmuch as the City of Hopkins contains many service stations who would be similarly entitled to receive such a license upon application if the existing policy were modified would substantially increase police observation and enforcement concerning the possibility of illegal sales and misuse of the product.

7. A sufficient number of facilities are now available for the sale of the 3.2 beer in packaged form to the public so as not to create an inconvenience or monopoly in favor of any one particular seller.

The City of Hopkins has issued eleven grocery licenses to various stores, of which seven also have licenses to sell 3.2 beer off sale. No licenses to sell 3.2 beer have ever been issued to gas stations whether or not they are also licensed to sell groceries.

Appellant moved the trial court for summary judgment and for an order declaring that appellant was entitled to receive a license to sell 3.2 beer at off sale in connection with its convenience grocery business. Appellant's motion was denied and the complaint subsequently dismissed. Appeal is now taken from the judgment dismissing the complaint.

## ISSUES

1. Did respondent city have authority to determine liquor licensure requirements?

2. Was the respondent's classification of stores into grocery stores and combination gas station/grocery stores for the purpose of liquor licensure a denial of appellant's equal protection rights under the law?

## ANALYSIS

1. Generally, a city council has broad discretion to grant, deny, or renew a liquor license. Minn.Stat. § 340A.403, subd. 1 (1984) provides:

The governing body of a city or county may issue off-sale or on-sale licenses for the sale of nonintoxicating malt liquor within their respective jurisdictions.

*Id.* Section 340A sets out general limitations and regulations on the issuance of liquor licenses, including possession, sales practices, and operating restrictions. Appellant objects to respondent's refusal to issue liquor licenses to stores that also pump gas as a restriction on licensure not specifically listed in § 340A and so without legislative authorization. This objection ignores the effect of Minn.Stat. § 340A.509 (1984) which states:

A local authority may impose further restrictions and regulations on the sale and possession of alcoholic beverages within its limits.

This provision is merely a codification of the necessarily implied power to effectuate the licensing authority. In discussing the implied powers of city to regulate liquor traffic, the Minnesota Supreme Court has held:

When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to make all such ordinances as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors.

*Cleveland v. Rice County,* 238 Minn. 180, 182, 56 N.W.2d 641, 643 (1952) *quoting City of Duluth v. Cerveny,* 218 Minn. 511, 516, 16 N.W.2d 779, 783 (1944). In *Cleveland,* the court stated that similar considerations applied to the power of the municipality to deal with nonintoxicating malt liquor. *Id.* Noting that the business of selling alcoholic beverages at retail has always been considered especially susceptible to local control, the court held that the power to license necessarily included the power to make rules and regulations necessary for the exercise of that power. *Id.* at 183–84, 56 N.W.2d at 643–44. In addition, it has been held that a city council's exercise of discretion in this area includes the power to refuse a license or to limit the number of licenses to be granted when, in their judgment, the welfare of the city suggests such action. *Polman v. City of Royalton,* 311 Minn. 555, 556, 249 N.W.2d 466, 467 (1977).

■ Since the city council is vested with broad discretion in determining whether to issue or renew a liquor license, the scope of review of such a determination is a narrow one, which should be exercised "most cautiously." *Wajda v. City of Minneapolis,* 310 Minn. 339, 343, 246 N.W.2d 455, 457 (1976).

2. The Minnesota Supreme Court has indicated a definite reluctance to overturn a municipality's discretionary action in the issuance or nonissuance of a liquor license. *See Wajda,* 310 Minn. at 343, 246 N.W.2d at 457. However, the court has noted that it would prevent an abuse of discretionary authority by granting relief from unreasonable, arbitrary, capricious, or fraudulent action of municipal authorities. *Id.* Further limiting a municipality's discretion in this area is the constitutional mandate of equal protection which requires the law to treat alike those who are similarly situated. *Salin v. Kloempken,* 322 N.W.2d 736, 742 (Minn.1982).

■ When, as in this case, there is no fundamental right or suspect classification involved, equal protection analysis requires only minimal judicial scrutiny. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312 (1976). If the classification is rationally related to the achievement of a legitimate governmental purpose, it should be upheld. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464 (1981). In *Miller Brewing Co. v. State,* 284 N.W.2d 353 (Minn.1979), the Minnesota Supreme Court stated:

The test to determine the constitutionality of statutory classifications includes three primary elements: (1) The distinc-

tions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* at 356. Evaluating respondent's action against the first prong of *Miller*, the distinction between grocery stores and combination grocery stores/gas stations was not arbitrary. As noted in the findings of the city council supporting their decision in this matter, the city has never allowed gas stations to sell beer. The city has always distinguished between grocery stores and gas stations in this area. That distinction has always been based on one very obvious difference: the sale of gasoline to prospective motorists.

Addressing the second prong of *Miller*, the classification in question is both genuine and substantial. The council found that licensing gas stations for beer sales would substantially increase police observation and enforcement needs, in addition to creating unique problems of enforcement of liquor laws for both the seller and the police. The council also found that Hopkins had a sufficient number of places selling 3.2 beer, and that further outlets were neither needed nor wanted. Drawing the line at combination grocery store/gas stations was a legitimate way to keep the lid on the number of 3.2 beer retailers in the city.

In support of satisfaction of the third prong of *Miller*, it is well established that an exercise of the police power will be upheld where it has for its object the public health, safety, morality or welfare and where it is reasonably related to the attainment of those objectives. *State v. City of Austin*, 246 Minn. 514, 517, 75 N.W.2d 780, 783 (1956). Limiting the number of liquor licenses to be granted is a valid exercise of a city's police power. *Minneapolis St. Ry. Co. v. City of Minneapolis*, 236 Minn. 109, 52 N.W.2d 120 (1952). Possible abuses in sales and usage and problems of increased police supervision and enforcement stemming from allowing 3.2 beer sales at gas stations are legitimate concerns that this license restriction was designed to address. Additionally, it has been previously established that a city council has the power to refuse a license or to limit the number of licenses to be granted when, in the judgment of the council, the welfare of the city suggests such action. *Polman*, 311 Minn. at 556, 249 N.W.2d at 467. It is clear then, that the purposes behind distinguishing between grocery stores and combination grocery stores/gas stations in the issuance of 3.2 beer licenses, as stated by the Hopkins city council, are purposes the city can legitimately attempt to achieve.

Applying the *Miller* test to this case, it is clear that the challenged classification is rationally related to a legitimate government purpose and, as such, survives constitutional scrutiny.

### DECISION

The trial court correctly concluded that the city's refusal to grant a liquor license to appellant's gas station/convenience store was both authorized and constitutionally acceptable.

Affirmed.