*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0412**

In the Matter of the Denial of Rental Dwelling Licenses to Compass Rose Real Estate, LLC, and North By Northwest Properties, LLC:

Compass Rose Real Estate, LLC, and North By Northwest Properties, LLC,
Relators,

vs.

City of Bloomington,
Respondent.

**Filed January 17, 2017
Affirmed
Rodenberg, Judge**

City of Bloomington City Council

Robert J. Shainess, Capstone Law, LLC, Minneapolis, Minnesota (for relators)

George C. Hoff, Jared D. Shepherd, Hoff Barry, P.A., Eden Prairie, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Relators Compass Rose Real Estate, LLC, and North by Northwest Properties, LLC,

appeal by writ of certiorari from the Bloomington City Council's denial of their rental-

license applications. Relators argue that the council arbitrarily and capriciously denied their license applications. We affirm.

**FACTS**

Relators were organized as limited liability companies by Craig Rheume. Relators purchased and renovated four properties in Bloomington, Minnesota. Relators then rented out these properties as "crash pads"[1] to commercial airline pilots and flight attendants. Each unit was made available to 12 to 14 airline employees, most or all of whom would stay overnight at the crash pad only a few nights each month. Like Rheume, himself a commercial pilot, those renting from relators were airline employees working out of Minneapolis-St. Paul International Airport (MSP) but residing elsewhere.

In July 2014, an employee of the City of Bloomington saw relators' website advertising these crash pad rentals and opened a complaint record on each of the four properties. The city notified relators that the city code required rental licenses to operate the crash pads. Relators applied for rental licenses shortly thereafter, and the city inspected the crash pads.

The city inspector found a number of code violations and sent relators a list of corrections required to comply with the city code. These corrections included that relators could not rent any unit to more than four unrelated persons, and needed licenses to rent the units, noting that the properties then had 12 to 15 beds.

---

[1] A "crash pad" is an apartment or house that is shared by a number of airline professionals who commonly commute in or out of that city.

2

In the months that followed, Rheume reported to the city that he made most of the required corrections. He reported that relators had changed their business model and amended the leases so as to only rent to four individuals in each unit. However, he did not remove the bunk beds in the units, which each still contained 12 to 15 beds. The city stated that it would not conduct a final inspection until relators removed the excess beds. Relators refused. City staff then denied relators' rental-license applications.

Relators appealed the license denial to the Bloomington City Council. The city council ordered an evidentiary hearing before an administrative law judge (ALJ). The ALJ found that relators complied with the license requirements, and recommended that the city grant the rental licenses to relators. The city council, by resolution, denied the license applications, citing (1) relators' history of violating the city code by operating illegal crash pads, (2) the public nuisance that granting the licenses would create for the surrounding residential area, and (3) that relators did not meet the minimum standards of the licensing requirements because operating "transient lodging" in that area would violate Bloomington's zoning code.

This certiorari appeal followed.

**D E C I S I O N**

**I.    Standard of review**

Relators ask us to apply the standard of review applicable to denials of conditional-use permits (CUPs), while respondent asks us to apply the more deferential standard of review used for license denials. Because relators applied for rental licenses, we apply the more deferential standard.

3

Municipal government actions are either legislative or quasi-judicial in nature. *Zweber v. Credit River Twp.*, 882 N.W.2d 605, 609 (Minn. 2016). City council decisions are legislative if they "affect the rights of the public generally," and are quasi-judicial when they "affect the rights of a few individuals analogous to the way they are affected by court proceedings." *County of Washington v. City of Oak Park Heights*, 818 N.W.2d 533, 539 (Minn. 2012). Discretionary licensing decisions are generally regarded as quasi-judicial acts. *Lam v. City of St. Paul*, 714 N.W.2d 740, 743 (Minn. App. 2006). We review a city council's quasi-judicial acts using a limited and "nonintrusive" standard, only reversing if the order or determination was "arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County*, 487 N.W.2d 237, 239 (Minn. 1992). We do not substitute our own findings of fact, or engage in de novo review of conflicting evidence. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 635 (Minn. 2012) (citing *City of Moorhead v. Minn. Pub. Utils. Comm'n*, 343 N.W.2d 843, 846 (Minn. 1984)). We will uphold a city council's decision as long as it is not arbitrary and capricious. *Id.*

Under this standard, a city council must deny a license application if the applicant has not met the minimum licensing standards required by a city ordinance. *Country Liquors, Inc. v. City Council*, 264 N.W.2d 821, 824 (Minn. 1978). Even if an applicant meets the minimum requirements of the ordinances, the city council may still deny the license application for "good cause," such as protecting the public health, safety, morality, or welfare of the city. *Minces v. Schoenig*, 72 Minn. 528, 532, 75 N.W. 711, 713 (1898); *Kayo Oil Co. v. City of Hopkins*, 397 N.W.2d 612, 615 (Minn. App. 1986). Our review is

4

"very narrow" when reviewing a city council's determination of good cause, and we "will normally sustain such discretionary decisions by municipal bodies;" only reversing them "in order to prevent manifest injustice" such as invidious discrimination. *Wajda v. City of Minneapolis*, 310 Minn. 339, 346, 246 N.W.2d 455, 459 (1976) (reversing a license denial when it was based on a presumption that the female applicant did not have a "strong" enough personality). When denying a license, a city council need only provide enough support for its findings to show that its decision was not "fraudulent, arbitrary, unreasonable, unsupported by substantial evidence, not within its jurisdiction, or based on an error of law." *Lam*, 714 N.W.2d at 743. Applying this standard of review, it is relators' burden to prove that the city's decision is not supported by the evidence. *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 310 (Minn. App. 2007).

This standard of review for licensing decisions is more deferential to city councils than the standard for decisions regarding CUPs. Unlike licensing decisions, an applicant for a CUP has a right to receive the permit once he shows that he complied with all ordinance requirements. *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984). As a result, a city council's decision to deny a CUP is arbitrary and capricious if the applicant shows he complied with the ordinances when he applied for the CUP. *Yang v. Cty. of Carver*, 660 N.W.2d 828, 832 (Minn. App. 2003) (citing *Zylka v. City of Crystal*, 283 Minn. 192, 196, 167 N.W.2d 45, 49 (1969)).

Relator argues that a rental-license application should be treated as a CUP application, and not a licensing application. We have distinguished between licenses and CUPs. *See Upper Minnetonka Yacht Club v. City of Shorewood*, 770 N.W.2d 184, 187

5

(Minn. App. 2009) ("A CUP is not a personal license, but a protected property right."); *Dege v. City of Maplewood*, 416 N.W.2d 854, 855-56 (Minn. App. 1987) ("Special use permits, like all provisions in local zoning ordinances, are not personal licenses but attach to and run with the land."). The Bloomington City Code regulates rental licenses and CUPs in separate chapters of the city code. *See* Bloomington, Minn., City Code Ch. 14 (2016) (discussing licensing standards and application procedures); Bloomington, Minn., City Code Ch. 21 (2016) (discussing zoning regulation and CUP standards and application procedures). Relators' rental-license applications were made under Bloomington City Code, chapter 14, section 571 (application for license) (2016). There was no CUP application. Relators applied for and were denied rental licenses. We therefore review the city council's denial under the license-application-denial standard of review.

## II. City Council's grounds for denying applications

In its resolution, the Bloomington City Council identified the following reasons for rejecting relators' license applications: (1) relators had a history of violating the city code by operating unlicensed and therefore illegal crash pads until discovered by city staff, (2) granting the licenses would have an adverse impact on the surrounding residential area, and (3) relators did not meet the minimum licensing requirements because operating transient housing in that area would violate the city's zoning code.

Under the applicable standard of review, we next consider whether the city's denial of the applications was arbitrary and capricious. The city must show "good cause" for having denied relators' applications. *Minces*, 72 Minn. at 532, 75 N.W. at 713; *Kayo Oil Co.*, 397 N.W.2d at 615. That relators met the requirements outlined in the ordinance for

6

issuance of a license is not dispositive. *Id*. The question before us is whether the city council's denial of the license is supported by substantial evidence. *Staeheli*, 732 N.W.2d at 310. "Substantial judicial deference is given to administrative fact-finding." *Id*.

One reason given by the city for having denied relators' rental-license applications is that relators had previously operated rental units without a license, and the city council was concerned that issuing the licenses would require significant city oversight and supervision, particularly while relators continued to have 12 to 15 beds in each unit that was purportedly being rented to no more than four people. Relators do not dispute that they operated rental units without the required rental licenses in the past. In fact, relators provided the city council with proof that they were renting the units without licenses, at the same time they were applying for licenses, by sending the city copies of their then-current lease agreements. It is not arbitrary or unreasonable for the city council to deny license applications by businesses that had violated and continued to violate the rental-license ordinance for over six years. This seems to us even clearer in light of relators' insistence on keeping many more bunk beds in each unit than the number of renters to which relators claimed in the license applications they would limit the rental operation.

Relators challenge the city council's other grounds for denying their applications, stating that the council did not have enough evidence to support its finding that granting the licenses would cause a public nuisance, and that they would not be operating "transient housing," as defined by city ordinances. Even if some of the other bases of the city's license denial were improper (which we do not conclude that they were), the city council has amply identified "good cause" for denying relators' applications by considering the

7

history of unlicensed and illegal operation by relators and their principal. We therefore affirm the city's denial of relators' license applications.

**Affirmed.**