**GREATER DULUTH COACT, a Minnesota corporation, Plaintiff,**

v.

**CITY OF DULUTH, a municipal corporation and The Minnesota Charitable Gambling Control Board, Defendants.**

**Civ. No. 5–88–229.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 22, 1988.

Kenneth D. Butler, Mark S. Rubin, Van Evera, Clure, Butler & Michelson, P.A., Duluth, Minn., for plaintiff.

Bill Dinan, Duluth City Atty., and John Smedberg, Asst. City Atty., City Hall, Duluth, Minn., for defendant City of Duluth.

Hubert H. Humphrey, III, Atty. Gen., and Mary Magnuson, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant The Minnesota Charitable Gambling Control Bd.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

On November 14, 1988 Duluth's city council passed a resolution disapproving the renewal of a charitable gambling license to Greater Duluth COACT (COACT). Under Minn.Stat. § 349.213, subd. 2, the city council's resolution prohibited the Minnesota Charitable Gambling Control Board (the board) from renewing COACT's license. COACT has filed suit claiming that the city council's action violated its right to due process and that Minn.Stat. § 349.213, subd. 2 is unconstitutionally vague. This memorandum and order addresses COACT's motion for a preliminary injunction. The Court has decided to issue a limited form of injunctive relief by requiring the city council to rehear COACT's application for a renewal of its charitable gambling license.

FACTS

Until 1984, charitable gambling in Minnesota was regulated entirely by local gov-

ernmental bodies. That year, the Legislature rewrote chapter 349 of the Minnesota Statutes to establish a state-wide regulatory system which preserved some degree of local control over charitable gambling activity. Defendant Minnesota Charitable Gambling Control Board was created by chapter 349. The board has responsibility for issuing and revoking licenses, registering gambling equipment, regulating the activity of gambling organizations and making reports to the Governor and Legislature. Minn.Stat. § 349.151, subd. 4. Under chapter 349, local authorities may regulate charitable gambling through regulations stricter than those adopted by the board. Minn.Stat. § 349.213, subd. 1. Local authorities may prohibit some or all forms of charitable gambling in the municipality and may require a permit for the conduct of gambling exempt from the state's licensing requirements. *Id.*

Municipal authorities also have the power to prevent the issuance or renewal of licenses to organizations seeking to operate within their boundaries. Minn.Stat. § 349.213, subd. 2. The board is required to notify municipal authorities each time an application for a charitable gambling license is filed by an organization desiring to operate in that locality. *Id.* If, within sixty days of receiving such notice, the municipality adopts a resolution disapproving the organization's application and so informs the board, the board is prohibited from issuing or renewing the license. *Id.*

COACT is a nonprofit organization which has operated a licensed pull-tab operation in Duluth since October 1986. For approximately the last year, COACT's pull-tab operation has been located in the Gopher Lounge in Duluth, Minnesota. Apparently the Gopher Lounge is a choice site for pull-tab business.

On September 30, 1988, plaintiff applied for a renewal of its charitable gambling license. The license was scheduled to expire on November 17, 1988.

In late October, Duluth's city attorney decided, on the recommendation of the chief of police, to ask the city council to adopt a resolution disapproving the renewal of COACT's charitable gambling license. On November 3, 1988, copies of the proposed resolution, the statement of purpose and the exhibits that would be offered in support were mailed to COACT and to Mark Rubin, attorney for COACT. Affidavits of Mailing by Jacalyn Meier–Raffe dated November 3, 1988. Originally scheduled to be heard before a committee on November 7, 1988, the matter was instead referred to the city council's Committee of the Whole for hearing immediately prior to the regular city council meeting on November 14, 1988.

Rubin and seven members of COACT were present at the meeting of the Committee of the Whole. *See*, Transcript of Duluth City Council, Committee 1, Meeting Regarding Greater Duluth COACT Charitable Gambling Licenses (hereinafter Committee Transcript) at 5. John Smedberg, Assistant City Attorney, and the police chief spoke in favor of the resolution to disapprove the renewal of COACT's license. Rubin and six of the COACT members spoke in opposition. Council members directed numerous questions at both sides. COACT did not, however, have the opportunity to question Smedberg[1] or the police chief.

The city council was concerned about allegations that COACT had not complied with an ordinance limiting the amount of rent which pull-tab operators could pay to bar owners. There were also allegations that COACT "froze" pull-tab boxes to allow customers who had lost a large amount to recoup some of their loss, and that COACT had not filed reports required by law. Rubin and the COACT members attempted to address all of these concerns. It may be, however, that broader concerns also influenced the city council's vote. Much of the council's discussion focused on the state policy regarding the enforcement of charitable gambling regulations. Several council members expressed a belief that the state had abdicated its responsibility

---

1. Smedberg's role in the hearing blurred the distinctions between a lawyer and a fact witness. It is important that the two roles not be combined because, while a witness is subject to cross-examination, a lawyer is not.

for monitoring the practices of the multi-million dollar gambling industry. These council members saw the vote on COACT's license renewal application as an opportunity to send a cautionary message to the other charitable gambling organizations and to impress on the State the need for better enforcement of gambling regulations.

At the city council meeting which followed the hearing on COACT's license renewal application, the council members voted 5–3 (with one member absent) to disapprove COACT's application for a renewal of its license.[2] The reasons for the resolution were "set forth" in attachments consisting of the same statement of purpose and exhibits which had been submitted in support of the resolution. The city council did not make any findings based on the record developed at the hearing.

On November 17, 1988, with its license scheduled to expire at midnight, COACT petitioned this Court for a temporary restraining order which would allow the pull-tab operation to continue. The petition was denied. Since then, COACT has not been able to do any fund raising or pay its employees, and it is now in danger of losing its lease at the Gopher Lounge. On November 28, 1988, COACT filed a new application for a charitable gambling license allowing it to operate at the Gopher Lounge. The city council has taken no action on the new application because of this lawsuit.

COACT is now before the Court seeking a preliminary injunction which would allow it to resume its pull-tab operation.

DISCUSSION

COACT's complaint raises two claims: first, that the city council denied COACT due process in violation of the fourteenth amendment and 42 U.S.C. § 1983, and second, that Minn.Stat. § 349.213, subd. 2, which allows local au-

thorities to prevent the issuance or renewal of charitable gambling licenses, is unconstitutionally vague.

The board has responded to COACT's suit by claiming that the eleventh amendment bars suit by a citizen against his own state in federal court. That claim is correct. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The exception created by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that a suit challenging the constitutionality of a state official's action is not one against the state, does not apply in this case because COACT has not raised a claim against any state official. Therefore, the board will be dismissed from this case.

*COACT's Motion for a Preliminary Injunction*

The test for whether preliminary injunctive relief should issue is set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir.1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." 640 F.2d at 113. Four factors are weighed:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

*Dataphase*, 640 F.2d at 114. Each factor will be considered in turn, beginning with the probability of success on the merits.

A. *Probability of Success on the Merits*

1. *COACT's Due Process Claim*

The fifth and fourteenth amendments prohibit governmental action which would

---

**2.** The full text of the resolution provides:

RESOLVED, that pursuant to Minnesota Statutes 349.213, Subd. 2, the Duluth City Council hereby disapproves of the Minnesota Charitable Gambling Control Board's issuance of charitable gambling licenses to the Greater Duluth COACT at the Gopher Restaurant and Lounge and Anton's sites. The reasons for

this disapproval are set forth in the attachments to this resolution and the statement of purpose of this resolution, which are made a part hereof.

RESOLVED FURTHER, that the City Clerk is directed to send a copy of this resolution immediately to the Charitable Gambling Control Board.

deprive "any person of life, liberty, or property, without due process of law." Due process encompasses two distinct, but related, protections. The doctrine of substantive due process protects certain fundamental rights and voids arbitrary action by the government. Procedural due process guarantees that deprivations of life, liberty or property be accomplished only through fair procedures.

■ Property interests, for the purposes of the due process clause,

are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *Daniels v. Woodbury County,* 742 F.2d 1128, 1132 (8th Cir.1984) (authorizing statute and implementing regulations of general relief program create a legitimate claim of entitlement and expectancy of benefits in persons who meet eligibility requirements).

The statutes relevant to this case provide that the board "may" issue a gambling license "to organizations meeting the qualifications of section 349.14, if the board determines that the license is consistent with the purpose of sections 349.11 to 349.-22." Minn.Stat. § 349.16. Section 349.14 requires that the profits from the gambling operation be used for charitable purposes. Minn.Stat. §§ 349.14 and 349.12, subd. 11. The purpose of section 349.11 to 349.22 is "to regulate legal forms of gambling to prevent their commercialization, to insure integrity of operations, and to provide for the use of net profits only for lawful purposes." Minn.Stat. § 349.11.

■ In the section governing local regulation, the statute sets limits on the fees that a municipality may collect or the expenditures that it may require from the gambling organizations within its jurisdiction. Minn.Stat. § 349.213, subd. 1. In addition, the statute states, "If the city council or county board adopts a resolution disapproving the license and so informs the board within 60 days of receiving notice of the license, the license may not be issued or renewed." Minn.Stat. § 349.213, subd. 2.

To determine whether this statute creates a property interest in the issuance and renewal of charitable gambling licenses, the best analogy is the statute governing liquor licensing. *See, State v. Rosenthal,* 93 Nev. 36, 559 P.2d 830, 833 (with regards to state's regulatory authority, gambling and intoxicating liquors are "in same class"), *app. dismissed,* 434 U.S. 803, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977).

The Minnesota Supreme Court has held that persons seeking renewal of their liquor licenses do have "a reasonable expectation of the continuing receipt of the benefit conferred by a license" as a result of their investment and because the licenses are generally renewed "as a matter of course." *Tamarac Inn, Inc. v. City of Long Lake,* 310 N.W.2d 474, 477 (Minn. 1981); *see also Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ("Once licenses are issued ... their continued possession may become essential in the pursuit of a livelihood.... In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). In this case, COACT's pull-tab operation employs eight people and, in the last two years, raised more than $300,000. Affidavit of Paula Dallum, par. 11. That an organization could reasonably expect a charitable gambling license to be renewed is established by the fact that the City of Duluth considered more than 100 license applications and has taken action on only one application, the one at issue here.[3] The board's renewal rate is also very high. Although exact figures are not available at this time, the board renews more than 90 percent of the licenses for which renewal is sought.[4]

---

**3.** This figure was provided by Assistant City Attorney John Smedberg at the hearing on this motion.

**4.** The board is in the process of moving and, as a result, its computer is "down." The estimated renewal rate of more than 90 percent was furnished by the board's counsel at the hearing.

Given that COACT does have a property interest in the renewal of its license, the second step of the analysis is to determine what "process" is due. The minimum procedure required before a state or local authority may deny a license reflects the fact that licensing decisions are adjudicative, rather than legislative, decisions. *Hornsby v. Allen*, 326 F.2d 605, 608 (5th Cir.1964). *See Daniels*, 742 F.2d at 1136. When a municipal or other governmental body grants or denies a license it is an adjudication that the applicant has or has not met prescribed standards for the award of that license.[5] *Hornsby*, 326 F.2d at 608. Beginning with *Hornsby* the procedure required before the government may deny a business license has been found to include timely notice, a fair hearing, the opportunity to present evidence, the opportunity to cross-examine opposing witnesses, and a written statement of reasons based on evidence adduced at the hearing.[6] *Hornsby*, 326 F.2d at 608–09; *Trumbull Division, Owens–Corning Fiberglass Corp. v. City of Minneapolis*, 445 F.Supp. 911, 917 (D.Minn.1978); *Haaf v. Board of County Commissioners of Benton County*, 337 F.Supp. 772, 777–78 (D.Minn.1971); *see also* 2 Cook & Sobieski, *Civil Rights Actions* par. 12.03 (1988).

Furthermore, a charitable gambling license is a means to support particular charities and the denial of such a license could, if based on the causes which the organization plans to support, raise equal protection or first amendment issues. *See*, Op.Atty. Gen. 733, July 29, 1988 (city ordinance limiting gambling to local organizations may be susceptible to challenge as violation of equal protection clause). Rigorous procedural rules are particularly important when such constitutional rights are implicated. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 561, 95 S.Ct. 1239, 1248, 43 L.Ed.2d 448 (1975).

The City of Duluth argues that due process is satisfied because COACT received "a meaningful opportunity to be heard at a time when the hearing itself is meaningful." Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction at 8. While Duluth argues that there is "no fixed formula" for the process due, it does not advance any argument challenging the case law which requires notice, fair hearing, an opportunity to present evidence and to cross-examine opposing witnesses, and findings based on the record prior to the denial of a business license.

■ In this case, COACT did receive adequate notice to prepare for the hearing, an impartial tribunal, and the opportunity to present evidence. COACT did not, however, have the opportunity to cross-examine the witnesses opposing renewal of its license and it did not have the benefit of a written decision based on the record produced at the hearing.[7] In these two respects, the process it received was deficient. The lack of written findings is particularly problematic because it becomes impossible to know the basis of the resolution disapproving the renewal of COACT's license. Where state law makes the issuance or renewal of a business license a discretionary act, the scope of substantive review permitted by the due process clause is very narrow. The licensing decision may be overturned by the courts only if it is arbitrary and capricious. *Hornsby*, 326 F.2d at 609; *see also Tamarac Inn*, 310 N.W.2d at 477; *Wajda v. City of Minneapolis*, 310 Minn. 339, 246 N.W.2d 455, 457 (1976). Substantive review, even of this limited nature, is impossible without written findings based on the evidence adduced at the hearing. Written findings are, for example, used in liquor licensing decisions which are also reviewed under the arbi-

---

**5.** Establishing the standards which must be met in order to secure or maintain a license is, on the other hand, a legislative, not adjudicative, action.

**6.** This does not mean that a trial-type hearing must be held by the city council itself. As long as its final decision is based upon the record, the city council may delegate to a committee the task of holding hearings, developing the evidence and making recommendations. *Trumbull Division*, 445 F.Supp. at 917.

**7.** The resolution incorporated a "statement of reasons" but the statement was written prior to the hearing and did not respond to the testimony presented by COACT at the hearing.

trary and capricious standard. *See, e.g., Tamarac Inn,* 310 N.W.2d at 476; *Wajda,* 246 N.W.2d at 457 (majority opinion) and 459 (dissenting opinion).

Without written findings, it is impossible to determine whether or not the city council decision to disapprove COACT's license was arbitrary and capricious. Although the allegations against COACT are serious, the testimony from the COACT members responded in some manner to each of the charges. In the absence of findings based on the record produced at the hearing, there is no means for the court to determine the basis of the city council's action. For example, the city council's concern about the state's failure to adequately enforce regulations on gambling activity may have had a significant influence on the vote, even though it is not relevant to COACT's application for a license renewal. The comments made by the court in *Trumbull Division* are apt,

> [T]his case vividly illustrates that informal hearings may be insufficient to protect the interests at stake. Plaintiff was often identified with another company by witnesses and Committee members ... plaintiff was given no formal statement of the reasons for the inaction and hence, even after expending substantial sums to satisfy the City, plaintiff could not tell precisely what more it had to do in order to qualify for a license.... [A] licensing process subject to so many irregularities is fundamentally unfair. It both jeopardizes the property owner's rights and ill serves the public, for where license denials are based on unstated reasons or unsubstantiated evidence, responsible [licensees] can only be discouraged from trying to work within a community and respond to the public's legitimate needs.

445 F.Supp. at 916.

The Court therefore concludes that COACT has demonstrated a likelihood of success on the merits on the due process claim.

### 2. *Claim that Minn.Stat. § 349.213, subd. 2 is unconstitutionally vague*

COACT's second claim is a facial attack on Minn.Stat. § 349.213, subd. 2. COACT claims the statute is unconstitutionally vague because it provides no standards to guide the decision of a municipality acting to disapprove an application for a charitable gambling license.

 The degree of vagueness tolerated by the Constitution varies with, among other things, whether the statute provides for civil or criminal penalties and whether the law threatens to inhibit constitutionally protected rights. *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362 (1982). *See Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (describing the problems which justify a law being held void for vagueness).

 Minn.Stat. § 349.213, subd. 2, provides:

> Before issuing or renewing an organization license, the board must notify the city council of the statutory or home rule city in which the organization's premises are located or, if the premises are located outside a city, by the county board of the county and the town board of the town where the premises are located. If the city council or county board adopts a resolution disapproving the license and so informs the board within 60 days of receiving notice of the license, the license may not be issued or renewed.

The power to prevent the issuance of a license is one of the means by which the Legislature sought to provide local governments with the power to regulate charitable gambling activities within their borders. The statute also authorizes local governments to adopt stricter regulations than those promulgated by the board to govern the conduct and forms of local gambling within their jurisdictions. Minn.Stat. § 349.213, subd. 1. This may include the total prohibition of any form of lawful gambling. *Id.*

Chapter 349 reflects an intent on the part of the Legislature to allow local governments to control charitable gambling within the parameters established by the state's statute and regulations. Given this intent,

it is apparent that Minn.Stat. § 349.213, subd. 2, delegates to local governments the authority to develop and apply standards which an organization must meet in order to receive a license to operate gambling activities in its jurisdiction.

Thus, section 349.213, subd. 2 provides no standards for approving the licenses of charitable gambling organizations because the Legislature intended to give local governments the power to set these standards. Such delegation is common and quite proper. *See, e.g., State v. Morrow,* 175 Minn. 386, 388, 221 N.W. 423, 423 (1928) (ordinance failing to prescribe standards to govern grant and revocation of parking lot licenses by city council not unconstitutional); Minn.Stat. §§ 340A.404 (liquor licenses), 375.40 (carnivals), 462.357 (zoning regulations). In no case can local authorities grant or deny licenses in an arbitrary and capricious manner. *See, Wajda,* 246 N.W.2d at 457.

Therefore, COACT cannot succeed on its claim that Minn.Stat. § 349.213, subd. 2, is unconstitutionally vague.

## B. *Irreparable Harm*

Given that COACT has established a likelihood of success on the merits of its due process claim, it must also show that it would suffer irreparable harm unless a preliminary injunction is issued. *Dataphase,* 640 F.2d at 113–14. As the Supreme Court has stated,

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974), *quoting Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921 (1958).

COACT was forced to cease operation on midnight, November 17, 1988 when its license expired. COACT claims that three types of harm have resulted from the resolution barring the renewal of its license: It is not able to raise money for charity, it is not able to pay the salaries of its workers and its other operating costs, and it will lose a prime site for its pull-tab operations at the Gopher Lounge.

The first two types of harm are not irreparable; they are clearly compensable through money damages.[8] COACT's loss of a profitable site could not be compensated, except in a rough measure. Because COACT is in danger of losing the site unless it is able to resume its pull-tab operation in the near future, the threat of irreparable harm exists.

## C. *Balance of Harms*

The third factor to be considered by the Court in determining whether injunctive relief should issue is the state of balance between the harm suffered by the moving party if an injunction is not issued and the injury resulting from the grant of the injunction on the other parties litigant. *Dataphase,* 640 F.2d at 113–14.

The balance of harms depends upon the form that the injunctive relief takes. In this case, two alternative forms of injunctive relief are available. The first is an order requiring the city council to hold a second hearing on COACT's application for renewal of its license which meets the requirements of due process. The second is an order requiring that the defendants allow COACT to operate its pull-tab operation without a license pending a decision on the merits of COACT's claim.

The first alternative does much less injury to the defendants than the second. It is, in effect, a remand rather than a reversal of the city council's decision. It burdens the board and the city a minimal amount. The second alternative wrests control of the regulatory decision away from the de-

---

**8.** It may be that the bulk of the damage, the money raised for charities, is not compensable at all. The loss of these funds injures the chari- ties that would have received the moneys, but does not injure COACT.

fendants prior to any decision by this Court on the merits.

### D. *Public Interest*

The final factor in the *Dataphase* analysis is consideration of the public interest. 640 F.2d at 114. Two opposing public interests are implicated by this motion. The first is the public interest in effective local control of charitable gambling activity. Chapter 349 of the Minnesota Statutes reflects strong legislative concern that local authorities be able to regulate charitable gambling in a manner that best matches the desires of the local populace. On the other hand, the due process clause of the Constitution reflects a citizen's fundamental interest in protection from arbitrary governmental action. Thus, the Court concludes that the public interest would be best served by an order which insures that COACT's application gets the appropriate consideration and, at the same time, respects defendants' statutory authority.

Accordingly, based on the foregoing, and upon all the files, records, proceedings and arguments of counsel,

IT IS ORDERED that:

1. Greater Duluth COACT (COACT) withdraw the application it filed on November 28, 1988 with the Minnesota Charitable Gambling Control Board (the board) for a license to operate a pull-tab operation at the Gopher Lounge in Duluth, Minnesota. The application should be updated and refiled within two weeks from the date of this order so that the process for issuance of a charitable gambling license set out in chapter 349 of the Minnesota Statutes starts anew.

2. As provided in Minn.Stat. § 349.213, subd. 2, the city council for the City of Duluth (the city council) shall have sixty days from the date notice of COACT's refiled application is received to determine whether or not to adopt a resolution which would prohibit the board from issuing a license to COACT for the Gopher Lounge.

3. Any resolution by the city council which, pursuant to Minn.Stat. § 349.213, subd. 2, disapproves of the issuance to COACT of a charitable gambling license for the Gopher Lounge must rely on findings of fact based on a record produced at an evidentiary hearing held by the city council or a properly authorized subordinate. The evidentiary hearing must afford COACT the rights required by the due process clause of the state and federal constitutions, including adequate notice of the hearing, the opportunity to present evidence, and the opportunity to cross-examine witnesses. A record of the proceedings shall be kept and findings of fact, based on that record, shall be made.

4. The board is hereby dismissed from this suit. The power and responsibilities of the board under chapter 349 of the Minnesota Statutes are not effected by this order. If within the relevant sixty-day period the city council has not adopted a resolution disapproving the renewal of COACT's license, the board shall act on the license in accordance with the authority granted to it by chapter 349.